Kimberly COLEMAN, Appellant,

v.

Stephanie SMALLWOOD, Appellee.

No. 08–89–00373–CV.

Court of Appeals of Texas,
El Paso.

Nov. 28, 1990.

R.C. "Eric" Augesen, Odessa, for appellant.

William R. Bowden, Odessa, for appellee.

Before OSBORN, C.J., and WOODARD and KOEHLER, JJ.

## OPINION

KOEHLER, Justice.

In a termination suit under the Texas Family Code tried to the Court, the parent-child relationship between the mother and her son was terminated. Appellee was appointed managing conservator of the child in contemplation of a subsequent adoption by her and her husband. The mother brings this appeal asserting five points of error. We affirm.

Kimberly Coleman, Appellant, was fifteen years old on March 30, 1989 when she gave birth to the child. She and the nineteen-year-old father were never married, formally or by common law. The couple moved back and forth with the child between Bryan and Odessa, living with various relatives and remaining unemployed much of the time through the period of the termination proceedings. In July 1989, the Appellant, the father, and the child were residing with the father's sister, Rhonda Thompson, in Odessa. The couple engaged in repeated quarrels, and Thompson was not pleased with the prospects for providing an acceptable family environment for the child. In addition, Odessa DHS (Department of Human Services) worker, Rhonda Lightfoot, contacted them to examine the child, a prior neglect complaint to the DHS office in Bryan having been referred to Odessa for follow-up.

At Rhonda Thompson's suggestion, the couple moved to Midland temporarily, leaving the child with Thompson. It was hoped that they would use the time, free of child-rearing stresses, to consider and resolve their family difficulties. During this time, a conflict arose involving Appellant's mother taking temporary custody of the child. Rhonda Thompson apparently sequestered the child to prevent this from happening. The parents returned to Odessa and regained access to the child. The father and Rhonda Thompson, however, began suggesting the advisability of finding someone to adopt the child. Appellee's mother-in-law lived with the mother of Rhonda Thompson. It was through this channel that Appellee and her husband learned of the possible availability of the child for adoption. Eventually, on August 8, Appellant and the father met with Appellee's attorney at his office, and each signed an affidavit of relinquishment of parental rights. Aided by her mother, Appellant began to inquire as to the possibility of revoking the affidavit the very next day. The affidavit provided that it was irrevocable for a period of sixty days following execution.

On August 18, 1989, Appellee filed a petition to terminate the parent-child relationships of both Appellant and the father, seeking appointment of herself as managing conservator. With regard to the father, termination was sought on the basis of Tex.Fam.Code Ann. § 15.02(1)(K) and (2) (Vernon Supp.1991) (irrevocable affidavit of relinquishment and best interest of the child). With regard to Appellant, the petition alleged grounds for termination under Section 15.02(1)(E), (1)(K) and (2) (irrevocable affidavit of relinquishment, engaging in conduct or leaving the child in the custody of persons who engaged in conduct which endangered the physical and emotional well-being of the child and best interest of the child). Testimony was presented by both sides. An attorney ad litem, the Hon. John Cliff, was appointed to represent the interests of the child. He ultimately took a position favoring termination and appointment of Appellee as managing conservator. The court granted Appellee's petition.

Appellant challenged the validity of her affidavit of relinquishment. She contended that although she fully understood its im-

port, she only signed it as a result of coercion, fraud, duress and undue influence on the part of the father and Rhonda Thompson. She testified that they advised her that DHS was about to take the child away from her in the next few days and that she would have no further contact with the child. They allegedly told her that, on the other hand, she could forestall the DHS action by relinquishing her parental rights and permitting adoption by Appellee and her husband, who would provide her with information and photographs of the child in the future. The father and Rhonda Thompson denied these allegations in their testimony.

■ Point of Error No. One asserts that the court applied the wrong burden of proof to her evidentiary burden. The parties are in agreement as to the placement of the burden of proof and the degree of proof required for termination under Section 15.02. Grounds for termination must be proved by clear and convincing evidence. *In the Interest of G.M.*, 596 S.W.2d 846 (Tex.1980). That burden is not lessened by proof of an irrevocable affidavit of relinquishment. In fact, such affidavit being one of the alleged grounds for termination, the affidavit must be established under that burden of proof. *Terrell v. Chambers*, 630 S.W.2d 800, 802–803 (Tex.App.—Tyler), *writ ref'd n.r.e.*, 639 S.W.2d 451 (Tex.1982). *See also* Tex.Fam.Code Ann. § 11.15 (Vernon 1986). On the other hand, an irrevocable affidavit of relinquishment may be revoked only upon the affiant's proof by a preponderance of the evidence that her signing was brought about by coercion, duress, fraud, deception, undue influence or overreaching. *Terrell*, 630 S.W.2d at 802; *Pattison v. Spratlan*, 535 S.W.2d 48, 50 (Tex.Civ.App.—Tyler), *modified and aff'd*, 539 S.W.2d 60 (Tex.1976).

■ The cited language used by the trial judge in this case does not reflect application of an improper burden of proof:

I do not find the burden met insofar as duress, deception, stress, fraud or overreaching, and I find by clear and convincing evidence that the best interests of the child that I terminate the parental

rights of Kimberly Coleman and Kevin Cobb, and it is so done.

The language of the decree itself is consistent with the quoted statement. No findings of fact or conclusions of law were requested. The court appears to have properly applied the clear and convincing standard only to the grounds for termination and best interest of the child, not to Appellant's burden in seeking to revoke the affidavit of relinquishment. Point of Error No. One is overruled.

■ In Point of Error No. Two, Appellant presents an evidentiary challenge to the court's adverse finding as to duress, deception, coercion and fraud, contending that Appellant's evidence met the necessary burden for establishing those vitiating factors. In effect, this is a factual insufficiency point that the failure to find in her favor was against the great weight and preponderance of the evidence.

■ When a factual sufficiency challenge is brought, the court must first examine all of the evidence, *Lofton v. Texas Brine Corporation, et al.*, 720 S.W.2d 804, 805 (Tex.1986); and after considering and weighing all of the evidence, the court may set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain, et al. v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

Appellant's brief simply reiterates the argument presented to the fact-finder. It is not this Court's function to second-guess the trial court fact-finder and merely substitute an appellate assessment of the weight and credibility of the evidence presented below. *Clancy v. Zale Corporation*, 705 S.W.2d 820, 826 (Tex.App.—Dallas 1986, writ ref'd n.r.e.). Even if the statements which Appellant attributed to Kevin Cobb and Rhonda Thompson were admitted, it is questionable whether they could be construed as duress, coercion, fraud or other level of inducement sufficient to allow Appellant to avoid her affidavit. *See Methodist Mission Home of Texas v. N__ A__ B__*, 451 S.W.2d 539, 543 (Tex. Civ.App.—San Antonio 1970, no writ). The

statements were denied, however, and the trial court was free to reasonably accept the credibility of the denials over Appellant's accusations.

Rhonda Lightfoot, the Odessa DHS worker testified that DHS was not contemplating taking the child away. Appellant knew how to contact Lightfoot and would have been advised that there were no plans for removal had she inquired, but no contact was made. Appellant admitted that between the time of the alleged coercion and the execution of her affidavit, she did have Lightfoot's telephone number but did not try to contact her. Nor did she consult with her mother. Appellant testified that she did speak to and seek counsel from Jara Kitsmiller, an instructor at Odessa College. She claimed that she told Kitsmiller of the threatened DHS action, but Kitsmiller testified that she made no such comment. The evidence was sufficient to support the court's rejection of the affirmative defense and implicit finding that the affidavit was voluntarily executed. Point of Error No. Two is overruled.

■ In Point of Error No. Three, Appellant asserts that Family Code §§ 15.-02(1)(K) and 15.03, providing for irrevocable affidavits of relinquishment by minors such as Appellant, violate the equal protection guarantees of the United States and Texas Constitutions. This point presents an interesting notion of denial of equal protection since the argument is that the Appellant has been denied the "unequal" protection usually accorded unemancipated minors whose execution of contracts cannot be enforced against them, whereas minors who execute a temporarily irrevocable affidavit of relinquishment under Sections 15.02 and 15.03 cannot disavow it on the ground of minority.

Appellant offers no authority in direct support of her position. The equal protection clause does not demand absolute equality of treatment and result in the design or application of legislation. The justification which will permit differing legislative treatment depends upon the nature of the interest involved and/or the identity of the classes of individuals adversely or disparately affected. If we assume, as is appropriate, that the familial interest of a natural parent constitutes a fundamental interest or right under the constitution, then the inclusion of minor parents in the provisions of Sections 15.02 and 15.03, without added protection for their minority status, demands strict scrutiny by the courts for the existence of a compelling state interest in establishing such a statutory structure and result. *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). The same standard obtains if we view the affected class of minor parents as a suspect category or "discrete and insular minority." *Graham v. Richardson*, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971).

Appellant concedes that the general immunity of minors from the enforcement of contractual obligations is not absolute, but has traditionally been held to yield in the case of contracts for the necessities of life. There can hardly be a greater necessity then the assurance of a safe, stable acceptable quality of life for an infant. That stability cannot be subjugated to the fluctuating whims of a relinquishing parent, adult or minor. *Brown v. McLennan County Children's Protective Services*, 627 S.W.2d 390, 393–394 (Tex.1982). In the situation represented by the present case, we are not dealing simply with the rights and interests of one minor, but of two. In *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), the life potential of a viable fetus was held to provide a sufficiently compelling state interest to permit legislative intrusion upon the fundamental privacy interests of the mother. Here, we are faced with the fundamental interests of a living child, a minor far more helpless and vulnerable than the minor mother. The inclusion of minor parents in the provisions of Family Code §§ 15.02 and 15.03 meets the standards of the federal and state constitutional guarantees of equal protection. Point of Error No. Three is overruled.

■ In her fourth point of error, Appellant challenges the sufficiency of the evidence to support the court's conclusion that

termination is in the best interest of the child. It should be emphasized that the evidence on this ultimate issue is not to be assayed on the same basis as the allegation of endangering conduct. The petition alleged two general theories for termination: (1) endangering conduct (on the part of the parent or an individual with whom the child was left by the parent) and best interest of the child; and (2) affidavit of relinquishment and best interest of the child. The absence of findings of fact and conclusions of law, coupled with the adequacy of the relinquishment previously discussed, obviates the need to consider Appellant's behavior and circumstances for specific endangerment of the child's physical and emotional well-being.

The negative evidence concerning continuation of Appellant's parental relationship with the child is significant. At best (by Appellant's own testimony), she has only been responsible for fifty percent of the child's care, the remainder of the burden falling upon her mother and Rhonda Thompson during periods of residency with these two relatives. There was evidence that Appellant reacted to the stressful demands of child-rearing (such as late night crying and loss of sleep) with anger (cursing at the child) and low-level physical violence (shaking the child), unhealthy for the child, albeit predictable given the fact that Appellant had just turned sixteen and was essentially a single parent. Appellant admitted one instance of smoking marihuana with the father while they had the child in their care and then driving in an automobile with the infant. While Appellant denied any drug problem or more significant drug usage, there was hearsay evidence (no objection/admissible anyway as declarations against penal interest) that she admitted using cocaine, methamphetamine and other "pills." The father testified that during the pregnancy, Appellant attempted or threatened traumatic self-abortion on several occasions. Appellant has an eighth grade education. She contemplates pursuing a G.E.D. program. The prospect of continuing her education, while working, does not bode well for also taking adequate care of her child, based on past perform-

ance. She and the father have terminated their relationship. Appellant anticipates assistance in housing and child care from her parents. She has had a turbulent relationship with her mother. While the latter testified to her willingness to help care for the child, her description of her present relationship with Appellant does not describe family reconciliation. Appellant's parents reside in a two-bedroom dwelling, also occupied by Appellant's brother. Her mother testified that they would look for a three-bedroom residence, but at the time of the hearing, they had taken no significant steps in that direction to assure adequate space for Appellant and her child. In short, the social, educational and economic prospects for Appellant continuing with her child reflect continuing and perhaps even greater stress, with a history of unsuccessful, unhealthy coping skills and behavior. A prior complaint of neglect, lodged with the DHS office in Bryan, Texas, apparently involved both parents spontaneously leaving their child at the hospital, at a time when they were expected to be in attendance, providing routine care in the child's room. Members of the nursing staff were available and the child was not in any immediate danger. A follow-up referral through the Odessa DHS office disclosed no physical evidence of neglect as of July. Nonetheless, the incident is best characterized as irresponsible, immature avoidance of parental responsibility—a trait continued in Odessa and in fact, an arguable component of Appellant's proposed plan for the future, relying on others to care for her child.

Appellee, on the other hand, holds forth an established family and household history. Her husband is employed, with good economic prospects. They have been married for twelve years and have a daughter in the first grade. The record presents sufficiently clear and convincing evidence to support the trial court's conclusion with regard to the best interests of the child under the factors enunciated in *Holley v. Adams*, 544 S.W.2d 367, 371–372 (Tex. 1976). Point of Error No. Four is overruled.

Point of Error No. Five asserts error in the appointment of an attorney ad litem under Tex.Fam.Code Ann. § 11.10(a) (Vernon 1986) on the morning of trial. Appellant's primary reliance is upon *Turner v. Lutz*, 685 S.W.2d 356 (Tex.App.—Austin 1984, no writ). Upon an initial appeal in that case, a decree of termination was overturned for failure to make such appointment. *Turner v. Lutz*, 654 S.W.2d 57 (Tex. App.—Austin 1983, no writ). Upon remand, a new termination decree was entered. In passing upon the second appeal, the Third Court of Appeals noted the "limited participation" of the ad litem, indicating the failure on his part to make an independent investigation of the case in respect to the *Holley* factors. Nothing in the record indicated that he had seen or interviewed the children. No written report was filed and the ad litem did not testify. No separate point of error challenged the performance of the ad litem. The comments were offered in the appellate opinion only in the context of reviewing the sufficiency of the evidence to support the termination decision.

In the present case, the attorney ad litem, recognized by this Court as an attorney of lengthy and diverse experience, was appointed on the morning of trial. Upon express inquiry, counsel for Appellant stated that he had no objections concerning the appointment. No continuance was sought on the basis of a tardy appointment and need for investigative opportunity. The attorney ad litem vigorously examined Appellee and her husband, both natural parents, the DHS caseworker from Odessa, and Appellant's mother. His questioning was equally aggressive and incisive with all the witnesses, regardless of their orientation to the parties in controversy. He reached a conclusion which he cogently argued to the lower court.

The deficiencies highlighted in *Turner* are for the most part inapplicable here. The testimony of all witnesses made it clear that a visual observation of the child would not disclose objective signs of injury or neglect, and would not have contributed to a resolution of the matter. Obviously an interview of the six-month-old child was not possible. We conclude that there was no error shown in the late appointment, but if the appointment was tardy, the error was rendered harmless by the adequacy of the ad litem's performance. Furthermore, if there was error in the late appointment, such error was waived by the express declination of any objection and the failure to request a continuance. Point of Error No. Five is overruled.

Judgment of the trial court is affirmed.