279 S.W.3d 441 (2009)
In the Interest of A.G.C., a Minor Child.
No. 14-07-00820-CV.
Court of Appeals of Texas, Houston (14th Dist.).
February 19, 2009.
*443 Stephen Douglas Pritchett Jr., Houston, TX, for appellants.
Stewart W. Gagnon, Pamela E. George, Miryam R. Mitchell, Michael A. Stafford, Houston, TX, for appellees.
Panel consists of Chief Justice HEDGES and Justices GUZMAN and BROWN.

OPINION
JEFFREY V. BROWN, Justice.
In this case, A.G.C.'s father executed an affidavit of voluntary termination of his parental rights to A.G.C., entered into a mediated settlement agreement incorporating the affidavit, and submitted an order to the trial court agreeing to the termination of his parental rights. On appeal, the father seeks to reverse the termination of his parental rights to A.G.C., contending that his affidavit is invalid because it does not satisfy the statutory prerequisites of Texas Family Code section 161.103, the mother failed to demonstrate by clear and convincing evidence that he voluntarily signed the affidavit or that termination is in A.G.C.'s best interest, and the trial court wrongly excluded evidence bearing on both. Further, the father contends the judgment does not conform to the mediator's rulings. For the reasons explained below, we affirm in part and reverse and remand in part.

Factual and Procedural Background
Because of the conduct of the proceedings below and the procedural posture on appeal, few facts may be gleaned from the evidentiary record.[1] A.G.C. was born to "Mother" on February 5, 2006. Mother and "Father" never married, but it is undisputed that Father is the biological parent of A.G.C. Mother sued to terminate *444 Father's parental rights. After participating in mediation, on July 10, 2007, the parties signed a Mediated Settlement Agreement ("MSA"). Among other things, the MSA provided that Father would execute a voluntary relinquishment of his parental rights to A.G.C. That same day, Father signed and notarized a document entitled "Father's Affidavit for Voluntary Relinquishment of Parental Rights." The MSA and Father's affidavit were filed with the court on June 11, 2007.
Relevant here, the MSA provided that "PER § 161.2061" of the Family Code, Father was to have limited, supervised visits with A.G.C. and agreed to take drug tests before the visits and to also take random drug tests at Mother's expense. The MSA also provided that the mediator would act as the arbiter of any disagreement over the details of the final order or decree prior to the date of entry, and his decision would be final and binding. Similarly, the parties agreed to resolve any other disputes arising with regard to the interpretation or performance of the MSA or its provisions with the mediator, and if no agreement could be reached, the mediator would act as an arbiter and resolve the issue. Mother and Father subsequently met with the mediator on two occasions to address disagreements over the wording of the final order terminating Father's parental rights.
On September 7, 2007, just before the expiration of the sixty-day period in which Father's affidavit was irrevocable, Mother and attorneys for Mother, Father, and A.G.C.'s amicus attorney appeared before a visiting judge for a hearing on the termination order.[2] Attorneys for Mother and Father each presented proposed termination orders. The proposed orders were substantively similar, except that Father's proposed order contained certain additional details concerning notice, visitation, and drug testing. Mother also testified briefly, and requested that her order be signed. After a discussion with the attorneys in which Father's attorney represented that the differences between the two orders were not significant, the trial court signed Mother's proposed order terminating Father's parental rights to A.G.C. The order recited that the parties reached the agreements contained in the order in mediation, and that the order represented a "merger" of the MSA. The order also recited that the trial court found by clear and convincing evidence that Father, voluntarily and after advice of counsel, executed an affidavit of relinquishment of parental rights and that termination of the parent-child relationship between Father and A.G.C. was in the best interest of the child.
Consistent with the MSA, the order further recited the parties' agreement that, "pursuant to § 161.2061," Father was to have limited post-termination contact with A.G.C. on specified terms and conditions. Among other things, the order provided for Father to have four-hour, supervised visits with A.G.C. twice a month during any nine months of the year as designated by Mother. The order also required that Father submit to an observed drug test before each scheduled visit, as well as random drug tests, and provided that Father's *445 supervised access to A.G.C. would be immediately and finally terminated if Father failed a drug test or otherwise violated certain terms of the order. Additionally, the order acknowledged that Mother and Father agreed to act in good faith with respect to the terms of the order, and detailed the consequences if either party willfully violated those terms.
On September 9, 2007, two days after the termination order was signed and just after the sixty-day period in which the affidavit of relinquishment was irrevocable had expired, Father filed with the court an "Affidavit to Revoke the Father's Affidavit for Voluntary Relinquishment of Parental Rights." Father also presented several post-judgment motions to the trial court. Among other things, Father contended that a new trial should be granted because the evidence was legally and factually insufficient to support the judgment, he did not voluntarily sign the affidavit of relinquishment, and the trial court's order did not comply with the mediator's rulings. He also argued that the trial court failed to consider the report prepared by the court-appointed psychologist, Dr. Jean Guez, who had determined that there was no evidence that termination of Father's parental rights was in A.G.C.'s best interest.[3]
Mother responded to Father's motions and moved to strike Father's affidavit in support of his motion for new trial. At a hearing on the motion for new trial, the trial court denied Father's motion without hearing evidence, but allowed Father to make an offer of proof. The trial court granted Mother's motion to strike Father's affidavit, and attached to its order as an exhibit a copy of the affidavit with the stricken portions blacked out. At a later hearing, the trial court also denied Father's motion to reform the judgment, and overruled his objections to the trial court's findings of fact and conclusions of law.

Father's Issues
On appeal, Father contends the trial court erred by: (1) terminating Father's parental rights; (2) refusing to consider evidence bearing on the propriety of the termination; and (3) alternatively, refusing to reform the judgment to conform to the mediator's rulings. We address the issues below.

I. The Affidavit of Relinquishment
In his first issue, Father contends that there can be no termination of parental rights without an affidavit of relinquishment that strictly complies with the statutory requirements of Family Code Chapter 161. Section 161.001 provides that one ground upon which a court may order a parent-child relationship terminated is if it finds by clear and convincing evidence that (1) a parent has executed an unrevoked or irrevocable affidavit of relinquishment of parental rights as provided by Chapter 161, and (2) termination is in the best interest of the child. See Tex. Fam.Code Ann. § 161.001(1)(K), (2) (Vernon 2008). Father complains that his affidavit failed to comply with the requirement of Family Code subsection 161.001(1)(K), because it does not designate a "prospective adoptive parent" as managing conservator as a condition precedent to termination. Specifically, former Family Code subsection 161.103(b)(12) provided that the affidavit must, among other things, contain:

*446 the designation of a prospective adoptive parent, the Department of Protective and Regulatory Services, if the department has consented in writing to the designation, or a licensed child-placing agency to serve as managing conservator of the child and the address of the person or agency.
See Act of May 20, 1997, 75th Leg., ch. 561, § 9, 1997 Tex. Gen. Laws 1983, 1989, amended by Act of May 22, 2007, 80th Leg., ch. 1412, § 1, 2007 Tex. Gen. Laws 4855, 4856, current version at Tex. Fam. Code Ann. § 161.103(b)(12) (Vernon 2008).[4]
Father contends that, because his affidavit does not name a prospective adoptive parent, the Department, an adoption agency, or anyone else as a managing conservator, it is fatally defective. He gives three reasons for this conclusion. First, Father argues that this statutory prerequisite constitutes a condition precedent that "must" be complied with, and a court may not disregard the legislature's directive. See Tex. Gov't Code Ann. § 311.016(3) (Vernon 2008) ("`Must' creates or recognizes a condition precedent."); Helena Chem. Co. v. Wilkins, 47 S.W.3d 486, 493-94 (Tex.2001) (the term "must" in a statute is generally recognized as mandatory unless its context requires a different construction). Second, he argues that strict compliance is required because the relationship between a parent and child involves fundamental constitutional rights and a presumption exists that the parent-child relationship should not be disturbed. See Holick v. Smith, 685 S.W.2d 18, 20 (Tex.1985); Colbert v. Dep't of Family & Protective Servs., 227 S.W.3d 799, 808 (Tex.App.-Houston [1st Dist.] 2006), pet. denied, In re D.N.C., 252 S.W.3d 317 (Tex.2008). Finally, Father contends that section 161.103(b) was intended to facilitate the termination of parental rights in anticipation of adoption only, and to permit the use of an affidavit of relinquishment in a custody dispute contravenes Texas public policy to involve both parents in a child's upbringing. See Tex. Fam.Code Ann. § 153.001(a) (Vernon 2008) (providing that, among other things, Texas public policy is to "assure that children will have frequent and continuing contact with parents" and to "encourage parents to share in the rights and duties of raising their child").
We first respond to Father's contention that the word "must" as used in the statute necessarily imposes a mandatory requirement. A review of Helena Chemical Co. v. Wilkins, the case on which Father relies, actually undercuts his argument. In Helena Chemical, the supreme court acknowledged that courts have often interpreted the use of "must" in a statute as mandatory, creating a duty or obligation. 47 S.W.3d at 493. However, the court went on to explain that it has also held that language that may appear to impose a mandatory duty is only directory "when this interpretation is most consistent with the Legislature's intent." Id. To determine whether the legislature intended a provision to be mandatory or directory, therefore, courts must consider the plain meaning of the words used, as well as *447 the entire act, its nature and object, and the consequences that would follow from such construction. Id. at 494.
Family Code subsection 161.103(b) requires that an affidavit for voluntary relinquishments of paternal rights "must contain" specific information about the child and the parents, including the designation of an prospective adoptive parent or consenting agency to serve as a managing conservator for the child. However, in the present situation no such person or agency is necessary. Mother is A.G.C.'s biological parent, and as such has all the rights and duties of a parent. See Tex. Fam.Code Ann. § 151.001 (Vernon 2008). Mother sought to terminate Father's parental rights, no adoption has been sought, and no change was contemplated in the relationship between Mother and A.G.C. Further, Father stipulated that Mother should be appointed A.G.C.'s sole managing conservator. Consequently, in this circumstance of a private agreement between the parents in which the child was to remain with the mother and no adoption was contemplated, no designation of anyone else under section 161.103(b)(K) was necessary. Although the statute does not directly speak to this situation, we conclude that the legislature would intend the requirement of this subsection to be directory only when the parties have agreed and the court has determined the termination is in the best interest of the child. See Helena Chem. Co., 47 S.W.3d at 493-94.
This conclusion is supported by reference to Family Code section 161.207, which provides:
(a) If the court terminates the parent-child relationship with respect to both parents or to the only living parent, the court shall appoint a suitable, competent adult, the Department of Protective and Regulatory Services, a licensed child-placing agency, or an authorized agency as managing conservator of the child. An agency designated managing conservator in an unrevoked or irrevocable affidavit of relinquishment shall be appointed managing conservator.
Tex. Fam.Code Ann. 161.207(a) (Vernon 2008) (emphasis added). This section reflects that a designation of a managing conservator is required in the order of termination when the court terminates the parent-child relationship with respect to both parents or to the only living parent. Father's argument that the designation of someone or some agency is always required would preclude the possibility of a single-parent household after a voluntary relinquishment of parental rights that is in the best interest of the childa result contrary to logic and practical realities.[5] We are not persuaded that the legislature would have intended such a result.
Father's constitutional argument fares no better. We understand it to be that the "plain meaning" of the statute should be strictly enforced to protect his constitutional right to maintain his parent-child *448 relationship. Although recognizing that the parent-child relationship is one of constitutional dimension, see Holick v. Smith, 685 S.W.2d at 20, Father does not explain how the failure to name a managing conservator in any way affected his constitutional rights. He does not contend that the absence of the designation has affected his full knowledge of the rights he is relinquishing or impaired his understanding of the legal consequences of his decision. We have already concluded that in this circumstance the use of the word "must" is directory only, not mandatory, and that this interpretation effectuates the legislature's intent. Therefore, we are not impermissibly thwarting a legislative directive as Father implies. Moreover, Father's stipulation that Mother should be appointed A.G.C.'s managing conservator substantively cures any perceived impairment of rights resulting from the technical omission of this information from the affidavit.
Further, we reject Father's argument that "the law permitting an affidavit of relinquishment to have legal effect references only adoptions as a valid purpose for termination" and that its use in this circumstance violates Texas public policy. Father argues that section 161.103 is inextricably linked to the adoption process, and that here it was improperly used to resolve a custody dispute rather than to accomplish an adoption. As support, Father points out that the chapter on termination of parental rights (Chapter 161) is "paired" with the chapter on adoption (Chapter 162). He also notes that adoptions are conditioned on a termination of parental rights, and that the affidavit of relinquishment provision cross-references adoption. See Tex. Fam.Code §§ 161.103(b)(12), 162.001(b) (Vernon 2008). Therefore, Father posits that termination and adoption "go hand-in-hand in the structure of the Family Code."
However, although the placement of the chapters is logical because adoption may require a termination of parental rights, it does not necessarily follow that the inverse is truethat there can only be a termination if there is an adoption. First, although the adoption chapter of the Family Code follows the termination chapter, the two are separate. Second, termination may be sought by an agency or, as in this case, by the parent. See Tex. Fam Code Ann. § 102.003 (Vernon 2008). In at least one other case, a mother brought a termination suit that was not combined with an adoption, and the termination based on the father's voluntary execution of an affidavit of relinquishment of his parental rights to his children was affirmed. See In re N.P.T., 169 S.W.3d 677 (Tex.App.-Dallas 2005, pet. denied) (affirming termination of father's parental rights to children in divorce proceeding when father executed affidavit of relinquishment as part of plea bargain in criminal case). Third, nothing in the statutes prohibits the use of an affidavit of voluntary relinquishment to terminate one's parental rights in situations not involving adoption. In the absence of an express indication that the legislature intended to limit the use of an affidavit of voluntary relinquishment only when adoption was contemplated, we decline to read such a limitation into the Family Code.
Finally, we reject Father's assertion that the result must be different in this case because Texas public policy encourages both parties to be involved in a child's upbringing. Although we agree that these policy considerations are significant, they are generally applied in the context of custody disputes, not the termination of parental rights. And, although Father describes this case as a "custody dispute," he agreed to resolve the dispute with Mother by terminating his parental rights to A.G.C., as opposed to making some other *449 type of custody arrangement. Moreover, we note that an overriding policy concern is the child's best interest, and many circumstances exist in which the best interest of the child involves terminating a parent's rights, whether voluntarily or involuntarily. See Tex. Fam.Code Ann. § 153.002, § 161.001. In such circumstances, the policy concerns Father urges would not apply. Contrary to Father's assertion, therefore, we conclude that limiting the available avenues for terminating parental rights as Father suggests, particularly when the statutes contain no such limitation, may in certain circumstances actually impede the primary public policy of attaining the best interest of the child.
We therefore overrule Father's first issue.

II. The Evidence Supporting the Judgment and Motion for New Trial
In his second issue, Father contends the judgment cannot be supported because the record does not establish that there is clear and convincing evidence that he voluntarily signed his affidavit of relinquishment and that the termination was in A.G.C.'s interest. See Tex. Fam.Code Ann. § 161.001. Additionally, Father contends that the trial court erred in refusing to hear evidence bearing on these issues when it heard Father's motion for new trial.

A. Evidence of Voluntariness and Best Interest of Child
First, Father contends that there was no evidence that his affidavit of relinquishment was voluntary. Specifically, he contends that Mother's testimony did not raise a fact issue on voluntariness and that the pleadings, his affidavit, and the MSA not are in evidence and so cannot be considered on appeal. Even if the affidavit was considered evidence, he argues, it is not sufficient by itself to demonstrate voluntariness, and the record establishes that the affidavit was involuntary because it was based on an unenforceable promise of post-termination visitation. An involuntarily executed affidavit is a complete defense to a termination suit based on section 161.001(1)(K) of the Family Code. In re V.R.W., 41 S.W.3d 183, 193 (Tex.App.-Houston [14th Dist.] 2001, no pet.), overruled on other grounds sub nom., In re J.F.C., 96 S.W.3d 256 (Tex.2002).
At the September 7 termination hearing, Mother, her attorneys, Father's attorney, and A.G.C.'s amicus attorney were present. Mother testified that she moved for termination because Father had done things that endangered A.G.C., and that it was in A.G.C.'s interest that Father's parental rights be terminated. She also testified that there was "clear and compelling" evidence of which she was aware to justify that Father's parent-child relationship with A.G.C. be terminated. Additionally, Mother testified that she understood that A.G.C. would not be able to inherit through Father upon termination of his parent-child relationship, but that this was in A.G.C.'s best interest, and that Mother's family had sufficient funds to guarantee A.G.C.'s schooling, health, and the necessities of life. Father's attorney did not cross-examine Mother.
During the hearing, the court and the parties confirmed that the MSA and Father's affidavit of relinquishment were in the court's file. Attorneys for Mother and Father also submitted to the court proposed termination orders, which were substantively identical except that Father's included some variations on matters unrelated to termination. Father's proposed order acknowledged that it reflected the agreements reached by the parties in mediation and in the MSA filed with the court, and recited that termination was in *450 A.G.C.'s best interest. Similarly, in Father's affidavit of relinquishment, he averred that he freely and voluntarily relinquished all of his parental rights and duties, and that termination of the parent-child relationship was in the best interest of the child. Similarly, the MSA reflected that the parties agreed that the parties' agreement was in the best interest of the child. The trial court stated that it was entering its order to terminate parental rights based on the MSA and Father's affidavit of relinquishment.
Father cites Coleman v. Smallwood, 800 S.W.2d 353, 356 (Tex.App.-El Paso 1990, no writ), to support his contention that his affidavit alone could not support termination. However, Smallwood simply reiterates that the statutory grounds for termination, including termination based on an affidavit of voluntary relinquishment, must be proved by clear and convincing evidence. Here, the trial court had not only Father's affidavit of relinquishment and the MSA to consider, it also had Father's own proposed order requesting that his parental rights be terminated. Therefore, Smallwood does not compel a different result, because the court had before it much more than just Father's affidavit. Moreover, unlike in Smallwood, there was no issue raised or evidence offered that the affidavit was not voluntary. Indeed, Father sought to have his own order of termination signed, compelling the opposite conclusion.
Further, all the parties agreed that Father's affidavit and the MSA were filed with the court and formed the basis for the agreed-upon termination of parental rights. Because all the parties treated these documents as evidence, and no contested issues were presented, Father may not now complain that the documents were not in evidence and so may not be considered on appeal. See Bradford v. Bradford, No. 14-94-00881-CV, 1995 WL 613060, at *2 (Tex.App.-Houston [14th Dist.] Oct. 19, 1995, no writ) (not designated for publication) (holding that appellant was estopped to complain that documents were not admitted in evidence and so could not be considered on appeal when the trial court and parties treated the documents as if they were in evidence and appellant voiced no objection below); cf. Barnard v. Barnard, 133 S.W.3d 782, 788 (Tex.App.-Fort Worth 2004, pet. denied) (holding that it was error for the trial court to divide community property based on divorcing parties' separate inventories and settlement proposals not admitted into evidence when a later prove-up hearing was clearly contemplated and there was no settlement agreement between the parties).
Father also argues that his affidavit was not voluntarily executed because Mother's promise of post-termination visitation is unenforceable as a matter of law. Specifically, he contends that in the MSA Mother purported to promise him that he would have post-termination visitation pursuant to section 161.2061 indefinitely, but that section provides only for limited post-termination contact and permits a parent whose parental rights have been terminated to enforce visitation only "until the court renders a subsequent adoption order with respect to the child." See Tex. Fam. Code Ann. § 161.2061(f)(2) (Vernon 2008).[6] Father also cites several cases he contends stand for the proposition that an affidavit of relinquishment cannot be voluntary when it is induced by an unenforceable *451 promise of post-termination visitation as a matter of law. See Jones v. Tex. Dep't of Protective & Regulatory Servs., 85 S.W.3d 483 (Tex.App.-Austin 2002, no pet.); Queen v. Goeddertz, 48 S.W.3d 928 (Tex. App.-Beaumont 2001, no pet.); Vela v. Marywood, 17 S.W.3d 750, 759 (Tex.App.-Austin 2000), pet. denied, 53 S.W.3d 684 (Tex.2001) (per curiam); In re S.A.B., No. 04-01-00795-CV, 2002 WL 1573431 (Tex. App.-San Antonio July 17, 2002, pet. denied) (not designated for publication).
Initially, we note that this issue was not raised until Father's motion for new trial, which is discussed in greater detail below, and so was not an issue at the September 7 termination hearing. In any event, we find Father's argument of no merit under these circumstances. First, although he contends that he was induced to execute the affidavit of voluntary relinquishment based on a promise of post-termination visitation that was illusory because it was limited by section 161.2061, that limitation was clearly set out as a basis for the MSA, which provided in its Exhibit "A" the following:
1. [FATHER] EXECUTES A VOLUNTARY RELINQUISHMENT OF HIS PARENTAL RIGHTS.
2. AN AGREED ORDER TERMINATING HIS PARENTAL RIGHTS, RETAINING [FATHER'S] RIGHTS AS OUTLINED UNDER § 161.2061 IN PARAGRAPH 3 HEREIN BELOW, WILL BE APPROVED AND SIGNED BY THE COURT.
3. PER § 161.2061, VISITATION OF 4 HOURS ON THE 2nd SATURDAY AND 4th SATURDAY OF 9 MONTHS EACH CALENDAR YEAR SELECTED BY [MOTHER] BY DECEMBER 15 FOR THE NEXT CALENDAR YEAR....
(emphasis added). Father signed this exhibit indicating his approval, and his attorney also signed it. Nothing in the MSA or its Exhibit "A" includes any promise of unlimited visitation until the child reaches majority. Father's own proposed order terminating his parental rights also expressly limited his visitation to that provided in section 161.2061. The order recited, under a section entitled "Post-Termination Contact," that "the parties have agreed that pursuant to § 161.2061 of the Texas Family Code, [Father] shall have limited post-termination contact with the child only as specified herein and the Court hereby approves the parties['] agreement" (emphasis added). Under these facts, Father's argument that he was somehow duped into agreeing to limited visitation "per § 161.2061" is untenable. Father is a mature man and the father of an older child, his agreement was made as the result of a private, negotiated settlement in which he was represented by counsel, the proviso that visitation was to be in accordance with section 161.2061 was expressly and repeatedly referenced in the documents Father executed, visitation was not the only consideration for the agreement, and Father's own proposed order included the statutory limitation.
Moreover, contrary to Father's argument, the cases he relies on for support do not involve analogous circumstances or procedural postures and so are easily distinguishable. In general, these cases presented situations in which persons were induced into terminating their parental rights when they were teenagers, or they were unrepresented by counsel, or they were affirmatively misinformed, or they did not understand what they were signing, or some combination of these or other circumstances not present here. See Jones, 85 S.W.3d at 492-93 (on bill of review, held that mother, who was fourteen *452 when she became pregnant while in the Department's care, had not completed high school, was treated for depression while she remained in Department's care and was a teenager when she signed an affidavit of relinquishment without counsel present, presented prima facie evidence that Department provided incomplete and false information in violation of a legal duty owed to her to induce her to sign the affidavit); Queen, 48 S.W.3d at 930-32 (on bill of review, holding father presented meritorious defense that he involuntarily executed affidavit of relinquishment when unenforceable promise of visitation was sole consideration for termination concurrent with child's adoption, the affidavit was not witnessed, and the Family Code did not allow a parent to retain visitation rights after termination); Vela, 17 S.W.3d at 760-64 (holding relinquishment affidavit executed by young, unwed mother unrepresented by counsel was not voluntarily executed when adoption agency induced her to execute it by withholding information and promising unenforceable "sharing plan" after child was adopted in violation of duty owed to mother); In re S.A.B., 2002 WL 1573431, *2-3 (holding trial court did not err in granting bill of review when father, who had agreed to terminate his parental rights in exchange for continued access and his setting up a trust fund for son, presented some evidence that mother, who subsequently denied access to child, fraudulently induced father to sign relinquishment affidavit). As discussed above, there is no evidence that, as in these cases, Mother induced Father to sign the affidavit of relinquishment based on any unenforceable promise or misrepresentation.
Father next contends that there was no evidence that termination was in A.G.C.'s best interest, and parental rights cannot be terminated using an affidavit of relinquishment without clear and convincing evidence that the termination is in the best interest of the child. See Tex. Fam. Code § 161.001(1)(K) & (2); Vela, 17 S.W.3d at 759 (proof of both elements is required). Further, he contends that the trial court was required to make an independent determination of best interest. However, in Brown v. McLennan County Children's Protective Services, 627 S.W.2d 390 (Tex.1982), in which a mother appealed the termination of her parental rights to her two children based on a state agency's petition and the mother's voluntarily executed affidavit of relinquishment, the supreme court determined that under the facts before it, "we find it was the intent of the Legislature to make such an affidavit of relinquishment sufficient evidence on which the trial court can make a finding that termination is in the best interest of the children." Id. at 394. Consequently, it held that the absence of a statement of facts below did not deprive the mother of her ability to appeal because "[t]he affidavit and the agency's petition is the record which supports the trial court's judgment." Id.
Following Brown, the Fort Worth Court of Appeals held in Ivy v. Edna Gladney Home that "an affidavit of waiver of interest in child, in and of itself, is sufficient to find termination is in the best interest of the child." 783 S.W.2d 829, 833 (Tex.App.-Fort Worth 1990, no writ). Accordingly, the court held that the trial court did not err in failing to separately consider the Holley[7] factors when presented with an affidavit of relinquishment and testimony from the mother and a social worker. Id.; see also Lumbis v. Tex. Dep't of Protective *453 & Regulatory Servs., 65 S.W.3d 844, 850 (Tex.App.-Austin 2002, pet. denied) ("An irrevocable affidavit relinquishing a parent's rights and a petition for termination can support a finding that termination is in the best interest of the child and a judgment of termination."); Beyers v. Roberts, 199 S.W.3d 354, 360 (Tex.App.-Houston [1st Dist.] 2006, pet. denied) (noting in custody case that neither the statutes nor the common law require that a court must conduct a hearing to determine whether a mediated settlement agreement is in child's best interest).
As noted above, the trial court had before it not only Father's affidavit of relinquishment, it also had the MSA and Father's proposed order requesting termination, both of which reflected Father's agreement that termination was in A.G.C.'s best interest. Mother also testified that termination was in the child's best interest. And, even if her testimony alone was conclusory, the trial court could have found it credible based on the MSA and Father's proposed order. Therefore, on these facts, the trial court did not err in finding that termination was in A.G.C.'s best interest. See Brown, 627 S.W.2d at 394; Ivy, 783 S.W.2d at 833

B. The Evidence Father Sought to Present at a Hearing on His Motion for New Trial
Father also contends that the trial court should have heard newly discovered evidence at a new trial hearing that allegedly would have shown that his affidavit was involuntary and that termination was contrary to the best interest of the child. He contends the court should have heard the evidence because it was necessary to show lack of agreement to an agreed judgment and because it was newly discovered.
Specifically, Father contends that he was unaware at the time that Dr. Jean Guez, who was appointed by the trial court to evaluate the best interest and safety of A.G.C., had prepared and filed with the court a report in which she opined that "there is not sufficient evidence or reason to terminate [Father's] rights." Had he known of this report, he contends, he would not have signed the affidavit. In addition to Dr. Guez's report, Father also points to his attorney's offer of proof in which he represented that Father would testify that he was not aware that the promises made by Mother to give him visitation rights were unenforceable, the judgment would include terms not in the MSA, his visitation rights would end if A.G.C. were adopted pursuant to section 161.2061, the DPRS was required to agree to the visitation arrangement, and he did not know that Mother intended to act in bad faith concerning requests for drug testing that would trigger the end of visitation.[8] Father argues that he should have been permitted to introduce this evidence to demonstrate that he was not fully aware of the effects of signing the affidavit and that he signed it based on misrepresentations.
A party seeking a new trial on the ground of newly discovered evidence must show: (1) new evidence has been discovered since trial; (2) the failure to discover the evidence prior to trial was not because of lack of due diligence; (3) the evidence is not cumulative; and (4) the evidence is so material that it would probably produce a different verdict. Jackson v. Van Winkle, 660 S.W.2d 807, 809 (Tex. 1983), overruled on other grounds by Moritz *454 v. Preiss, 121 S.W.3d 715 (Tex.2003). Whether a motion for new trial on the ground of newly discovered evidence will be granted or refused is generally a matter addressed to the sound discretion of the trial court. Id. However, in matters relating to child custody, it can be error to refuse to grant a motion for new trial even though the evidence is not newly discovered, when there is an extreme case and the evidence is sufficiently strong. See C. v. C., 534 S.W.2d 359, 361 (Tex.Civ.App.-Dallas 1976, writ dism'd w.o.j.) (holding evidence of a parent's violent temper and striking of children warranted relaxed standard).
Here, Father has failed to establish that the evidence was discovered since the final judgment hearing or that he exercised due diligence to discover it. Much of the evidence Father contends the trial court should have heard is directed to his alleged lack of awareness and understanding of the consequences of agreeing to visitation pursuant to section 161.2061. We have already determined that his arguments concerning this statutory limitation on visitation, which was expressly referred to in both the MSA and his own proposed order terminating parental rights, did not in the circumstances presented constitute an unenforceable promise of visitation. Father does not explain how, why, or when he came to understand the meaning of the statutory limitation or why he or his attorneys did not discover its meaning until after Father had executed documents expressly agreeing to the limitation on visitation and affirmatively requesting the court to enter his order containing that limitation.
Additionally, concerning Dr. Guez's report, Father presents no evidence that he or his attorneys exercised due diligence to discover the report before the hearing. In his affidavit in support of his motion for new trial, Father averred that Dr. Guez's report was filed with the trial court on July 26, 2007, well over a month before the final judgment hearing on September 7, 2007. Father was aware that the trial court had appointed Dr. Guez and that she was to prepare a report to assist the court in addressing the best interest of the child; the report itself reflects that Father participated in a lengthy evaluation by Dr. Guez in preparation of the report. Father does not explain why he or his lawyers failed to contact Dr. Guez before the mediation or before the hearing to obtain the results of the report.
Apparently conceding that the evidence he sought to present in the motion for new trial was not newly discovered, Father argues that it should be considered under the more relaxed standard of C. v. C., 534 S.W.2d at 361. Although Father asserts that the facts in this case are "almost identical" to those in C. v. C., and therefore he is entitled to a new trial, we disagree.
In C. v. C., evidence was presented at the motion for new trial that the father, who had been appointed managing conservator of the divorced parents' two children, had a violent temper and harshly disciplined the children. Id. at 360. As examples, affiants averred that on one occasion, the father whipped his son for soiling his diaper and screamed at him that he was a "pig"; on another occasion, the father struck his son so severely that the son was bruised; and in another instance he struck his daughter causing her nose to bleed. Id. at 362. This evidence had not been elicited during the trial. Id. at 361-62. Based on the facts before it, the court held that the trial court abused its discretion in overruling the motion for new trial. Id. at 362.
However, the C. v. C. court cautioned that its holding "should not be interpreted as meaning that the court must grant a *455 new trial whenever the losing party brings forth new evidence bearing on the issue of the best interests of the children." Id. Instead, the court explained that an abuse of discretion is not shown unless the evidence presented in support of the motion, and not offered at the original trial, strongly shows that the original custody order would have a seriously adverse effect on the interest and welfare of the child, and that presentation of such evidence at a new trial would probably change the result. Id. We do not agree with Father that the nature of the evidence in this case is so extreme that the trial court's refusal to hear it constitutes an abuse of discretion. See id. at 361-62; see also In re C.B.M., 14 S.W.3d 855, 862 (Tex.App.-Beaumont 2000, no pet.) ("We would hold that in custody cases the trial court is not required to hear evidence at the hearing on the motion for new trial where the offer of proof indicates that the evidence is not newly discovered and is not evidence of the character outlined in C. v. C. and the line of cases relying upon it.").
Therefore, we overrule Father's second issue.

III. Father's Request to Reform the Judgment
In his third issue, Father requests that, even if the judgment is not reversed and remanded for a new trial or for the consideration of additional evidence, this court should remand with instructions to refer the case to the arbiter to resolve the differences between the parties. The MSA provides that any disputes between the parties in the interpretation or performance of the MSA should be resolved by the mediator acting as arbiter. As Father points out, the two orders submitted by the parties on September 7, 2007, demonstrate that differences existed in the parties' understanding of the MSA. Mother agrees that the judgment should be reformed to permit the arbiter to decide the parties' dispute about the provisions Father included in his proposed order that were not included in the final order. However, Mother requests that any remand should encompass only those additional terms that Father sought to have added to the order. We agree.
Accordingly, we sustain Father's third issue and remand the case to the trial court to order the parties referred to the arbiter as provided in the MSA so that the arbiter may render a decision concerning those portions of the order that Father submitted to the court but that were not contained in the trial court's order to terminate parental rights, signed September 7, 2007. The remainder of the trial court's order is affirmed.

Conclusion
We overrule Father's first and second issues, but sustain his third issue. Accordingly, we remand the case to the trial court to order the parties referred to the arbiter as provided in the Mediated Settlement Agreement so that the arbiter may render a decision concerning those portions of the order that Father submitted to the court but that were not contained in the trial court's order to terminate parental rights, signed September 7, 2007. We affirm the remainder of the court's order.
NOTES
[1] Citing as her directive Texas Rule of Appellate Procedure 38.1(f) (providing that, in a civil case, "the court will accept as true the facts stated unless another party contradicts them" and requiring statements to be supported by the record), Mother spends nine pages of her brief complaining about Father's statement of facts, primarily arguing that most of it comes from an offer of proof made at the hearing on Father's motion for new trial, and so is not "trial evidence." Mother details at length the offending paragraphs and sentences within each paragraph, and requests that they be struck. We acknowledge Mother's concern that we not accept Father's statement of facts as true and that we recognize that the facts are disputed; however, we have carefully reviewed the record that is properly before us, and so find it unnecessary to reach Mother's request.
[2] In his affidavit in support of his motion for new trial, Father avers that he went to court on the morning of September 7, 2007, to review the order he was proposing, and his attorney told him there would not be a hearing on that date and that the orders would be submitted for the trial judge to consider the next week. Father then left for work, and after lunch, his attorney called to inform him that Mother's order was signed by a visiting judge, and that Mother had testified and asked that her order be entered. Because he had been told there would be no hearing, Father complains that he "was not at the hearing to protect [himself]."
[3] The trial court appointed Dr. Guez on November 7, 2006, to evaluate the parties and the child to assist the court in determining the child's best interests, and ordered that she provide a written report by December 1, 2006. However, Dr. Guez's report, dated July 25, 2007, was not filed with the court until July 26, 2007. The report reflected that it was copied by fax to attorneys for Mother, Father, and A.G.C.'s amicus attorney.
[4] The 2007 amendment to section 161.103(b)(12) substituted "Family and Protective" for "Protective and Regulatory," a change that is not material to our discussion. However, for consistency we will cite to the former version because it applies to this case. See Act of May 27, 2007, 80th Leg., ch. 1412, § 3, 2007 Tex. Gen. Laws 4855, 4856 ("The change in law made by this Act applies only to an affidavit of voluntary relinquishment of parental rights executed on or after the effective date [Sept. 1, 2007] of this Act. An affidavit executed before the effective date of this Act is governed by the law in effect on the date the affidavit was executed, and the former law is continued in effect for that purpose.").
[5] In his reply brief, Father notes that there are many situations not involving adoption in which parental rights may be terminated as to only one parent, see Tex. Fam.Code section 161.001(1), and therefore section 161.207 merely acknowledges that such other situations exist. Additionally, Father argues that the affidavit-of-relinquishment provision requires that a conservator be named precisely because it was intended for use only when a conservator is necessary, i.e., when the contemplated termination of parental rights would leave a child without a parent, such as when an adoption is contemplated. However, nothing in the Family Code prohibits the use of an affidavit of relinquishment when one of two parents has voluntarily agreed to terminate his parental rights and the court has found that the termination is in the best interest of the child. See id. § 161.001(1)(K).
[6] Father also contends that the promise is unenforceable because section 161.2061(a) requires the agreement of the biological parent and the Department of Protective and Regulatory Services, which was not given here. However, because there was no agency involvement, the Department's approval was not required in this situation.
[7] Holley v. Adams, 544 S.W.2d 367 (Tex. 1976) (listing factors relevant to determining best interest of child).
[8] Father made similar allegations in an affidavit supporting his motion for new trial. As noted above, on Mother's motion, the trial court struck portions of the affidavit. Father does not appeal the trial court's ruling.