ACCEPTED
14-14-01029-CV
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS
4/27/2015 3:47:48 PM
CHRISTOPHER PRINE
CLERK

**Nos. 14-14-01029-CV,
and 14-14-01030-CV**

_____

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS
4/27/2015 3:47:48 PM
CHRISTOPHER A. PRINE
Clerk

**IN THE COURT OF APPEALS
FOR THE FOURTEENTH JUDICIAL DISTRICT
OF TEXAS AT HOUSTON**

_____

**IN THE INTEREST OF
A.L.H., A Child**

_____

**T.H. and L.M., Appellants**

**v.**

**DEPARTMENT OF FAMILY & PROTECTIVE SERVICES, Appellee**

_____

**APPEALED FROM THE 315th DISTRICT COURT OF HARRIS COUNTY,
TEXAS, Trial Cause No. 2014-00466J**

_____

**APPELLEE'S  BRIEF**

VINCE RYAN, COUNTY ATTORNEY
State Bar #99999939
By:  **Robert J. Hazeltine-Shedd**
Assistant County Attorney
State Bar #24067652
1019 Congress, 17th Floor
Houston, Texas  77002
Phone: 713/274-5292; Fax: 713/437-4700
Email: robert.hazeltine-shedd@cao.hctx.net
Attorney for Appellee
Texas Department of Family
          and Protective Services

**[ORAL ARGUMENT REQUESTED IF DEEMED NECESSARY]**

# TABLE OF CONTENTS

Table of Contents ............................................................................ ii

Index of Authorities ......................................................................iv

Reply Points ..................................................................................vi

Statement of Facts .........................................................................1

Summary of Argument....................................................................10

Argument and Authorities...............................................................18

**Reply Point One**: **There was sufficient evidence to support the trial court's termination of the appellant Mother's parental rights under section 161.001(1)(K) of the Texas Family Code** ...............................18

    1. Applicable Law and Scope of Review.......................................18

    2. Termination of the appellant Mother's rights was warranted where her affidavit of relinquishment was executed in accordance with what is required by law, it was admitted into evidence without objection, and the mother presented no evidence that it was made involuntarily as she claims on appeal........................................................................20

    3. There was sufficient evidence supporting that termination of the appellant Mother's rights was in the child's best interest where she executed an affidavit of relinquishment, averred in the affidavit that termination was in the child's best interest, failed to appear at trial or present any evidence, and the Department's plans for the child indicated his best interest would be served by terminating the Mother's rights…..........24

**Reply Point Two**: **There was sufficient evidence to support the trial court's termination of the appellant Father's parental rights under section 161.001(1)(N) of the Texas Family Code** ...............................29

1.  The fact that the Department named a relative who was able to care for A.L.H. did not preclude the trial court's finding that L.M. lacked the ability to provide the child with a safe environment under subsection (N) where L.M. failed to participate in any meaningful way in the case, was not incarcerated, and there was no evidence that the relative's willingness to provide care resulted from any arrangement with L.M.. ...........29

2.  The record demonstrates sufficient evidence supporting that the Department made reasonable efforts to return the child to L.M. where the Department served L.M. with notice of the case, sought to establish L.M.'s paternity, evaluated possible relative placements, and sought to have the child placed with L.M.'s sister, particularly where L.M.'s conduct indicated he had little interest in his child's return... ...........................36

**Reply Point Three**: **Though review of this ground is unnecessary, there was sufficient evidence to support the trial court's termination of the Appellant Father's parental rights under 161.001(1)(D) of the Texas Family Code.**...........................................................................................41

Prayer for Relief.............................................................................................45

Certificate of Service .....................................................................................46

Certificate of Compliance with Word Count ...........................................46

# INDEX OF AUTHORITIES

**CASES**                                                                                    **PAGE**

*Brown v. McLennan County Children's Protective Services,*
627 S.W.2d 390 (Tex. 1982) ...........................................................................12, 25

*Denman v. Alternatives In Motion,* 14-99-01262-CV, 2001 WL 40350 (Tex. App.—
Houston [14th Dist.] Jan. 18, 2001, no pet.).......................11, 12, 21, 22, 23, 24, 25

*Holley v. Adams,* 544 S.W.2d 367 (Tex. 1976) ....................................24, 25, 27, 28

*In re A.G.C.*, 279 S.W.3d 441 (Tex. App.—Houston [14th Dist.] 2009, no pet.)12, 25

*In re. A.S.*, 261 S.W.3d 76 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) 30, 40, 42

*In re A.V.,* 113 S.W.3d 355 (Tex. 2003)................................................................41

*In re B.B.,* 971 S.W.2d 160 (Tex. App.—Beaumont 1998, pet. denied)..................42

*In re. B.S.T.*, 977 S.W.2d 481 (Tex. App.—Houston [14th Dist.] 1998,
no pet.).................................................................................15, 36, 37, 38, 39

*In re C.H.,* 89 S.W.3d 17 (Tex. 2002) ........................................................15, 18, 37

*In re. D.A.*, No. 02-09-00460-CV, 2010 WL 3618718 (Tex. App.—Fort Worth
September 16, 2010, no pet.) ........................................................15, 36, 37, 38, 39

*In re. D.S.A.*, 113 S.W.3d 567 (Tex. App.—Amarillo 2003, no pet.) ....14, 30, 31, 34

*In re D.Z.R.-M.*, 14-13-01084-CV, 2014 WL 1390289 (Tex. App.—Houston
[14th Dist.] Apr. 8, 2014, no pet.) .......................................................................34

*In re F.L.I.*, 01-97-01192-CV, 1998 WL 418094, at *1
(Tex. App.—Houston [1st Dist.] July 23, 1998, no pet.)............................21, 23, 24

*In re. H.R.M.*, 209 S.W.3d 105, 110 (Tex. 2006) ..............................................32, 33

*In re J.F.C.,* 96 S.W.3d 256 (Tex. 2002) .........................................................18, 19

*In re. K.J.T.M.*, 06-09-00104-CV, 2010 WL 1664027 (Tex. App.—
Texarkana Apr. 27, 2010, no pet.) ..............................................................40

In re *M.R.J.M.*, 280 S.W.3d 494, 502 (Tex. App.—Fort Worth 2009, no pet.) ......42

*In re M.T.W.*, 01-11-00162-CV, 2011 WL 6938542 (Tex. App.—
Houston [1st Dist.] Dec. 29, 2011, no pet.) ............................................42

*In re. R.L.T.*, No. 07-02-0332-CV, slip op. at 3-4, 2003 WL 21458782 (Tex. App.—
Amarillo June 24, 2003, no pet.) ........................................................ 31, 32, 33

*In re S.M.L.*, 171 S.W.3d 472 (Tex. App.—Houston [14th Dist.] 2005, no pet.) ...42

*In re. V.D.A.*, 14-14-00561-CV, 2014 WL 7347776 (Tex. App.—Houston
[14th Dist.] December 23, 2014, no pet.) ........................................ 14, 29, 30, 33

*Montes v. Dep't of Family & Protective Services*, 01-10-00643-CV, 2011 WL
2089721 (Tex. App.—Houston [1st Dist.] May 19, 2011, no pet.) .......11, 20, 23, 24

*Texas Dep't of Human Servs. v. Boyd,* 727 S.W.2d 531 (Tex.1987) ........................41

## STATUTES

Tex. Fam. Code Ann. § 101.007 (West 2008) ..........................................................19

Tex. Fam. Code Ann. § 161.001 (West 2008) .................... 18, 20, 28, 29, 32, 41, 42

Tex. Fam. Code Ann. §161.103 (West 2008) ......................................11, 20, 31, 22

Tex. Fam. Code Ann. §161.211 (West 2008) ......................................11, 20, 22, 24

**REPLY POINT ONE**

There was sufficient evidence to support the trial court's termination of the appellant Mother's parental rights under section 161.001(1)(K) of the Texas Family Code.

**REPLY POINT TWO**

There was sufficient evidence to support the trial court's termination of the appellant Father's parental rights under section 161.001(1)(N) of the Texas Family Code.

**REPLY POINT THREE**

Though review of this ground is unnecessary, there was sufficient evidence to support the trial court's termination of the Appellant Father's parental rights under 161.001(1)(D) of the Texas Family Code.

**Nos. 14-14-01029-CV,**
**and 14-14-01030-CV**

_____

**IN THE COURT OF APPEALS**
**FOR THE FOURTEENTH JUDICIAL DISTRICT**
**OF TEXAS AT HOUSTON**

_____

**IN THE INTEREST OF**
**A.L.H., A Child**

_____

**T.H. and L.M., Appellants**

**v.**

**DEPARTMENT OF FAMILY & PROTECTIVE SERVICES, Appellee**

_____

**APPEALED FROM THE 315ᵗʰ DISTRICT COURT OF HARRIS COUNTY,**
**TEXAS, Trial Cause No. 2014-00466J**

_____

**APPELLEE'S  BRIEF**

TO THE HONORABLE JUSTICES OF THE COURT OF APPEALS:

Department of Family & Protective Services, Appellee, [hereinafter "Department"] submits this brief in response to the Appellant Brief.

**<u>STATEMENT OF FACTS</u>**

This appeal involves the child, A.L.H., who came to the Department's attention in January of 2014 when he was four months old.  RR, pp.7, 13.[1]  Before

_____

[1] Citations to the Reporter's Record are made to the one volume in which the transcript of the

- 1 -

A.L.H. was born, his mother, T.H., and father[2], L.M., had three other children all of whom had been removed from their custody because of T.H.'s use of drugs. RR, p.10. At the time this case went to trial, one of A.L.H.'s siblings was placed with a relative, one was in a foster home, and the third had been adopted by foster parents. *Id*. at 16-17. According to the Department's caseworker, Amy Zachmeyer, the Department made an investigation regarding A.L.H. following a report that the child was subject to medical neglect. RR, p.11. Though the Department ruled out that the child was medically neglected, A.L.H. was nonetheless placed in the Department's custody because of ongoing concerns regarding the mother's drug use. *Id*. Zachmeyer's testimony reflects that T.H. attempted to evade the Department's drug screens, and refused to submit to hair follicle drug testing. RR, p.11. This conduct, in combination with T.H.'s previous history, resulted in A.L.H.'s placement in the Department's conservatorship on January 30, 2014. *Id*.;

---

trial proceedings appears. Citations will be abbreviated "RR" followed by a notation of the page on which the cited material appears. Similarly, citations to material appearing in the Clerk's Record will be abbreviated with "CR" followed by the appropriate page number.

[2] When this case was initiated by the Department, its petition reflected that L.M.'s paternity had not yet been established. CR 4-5. Accordingly it named him as an alleged father and made the request that the court determine L.M.'s paternity. CR 4-5. The trial court's file contains two orders reflecting actions the court took pursuant to this request. Neither of these orders appears in the clerk's record in this appeal, but they are attached to this brief as Attachments 2 and 3, and a request to supplement the record has been made. The first order was entered on February 13, 2014 and required L.M. to submit to paternity testing. Attachment 2. The record reflects that L.M. failed to comply with this order as the court again ordered paternity testing on October 7, 2014, this time however requiring Ms. Moore, A.L.H.'s paternal aunt, to submit to the testing. Attachment 3. In addition, the Department's caseworker, Amy Zachmeyer testified that it was only through the aunt's provision of a DNA sample that the court was able to adjudicate L.M. as A.L.H.'s father. RR, p.8.

*see also* CR 22-24, 29 (Trial Court's Order for Protection of a Child in an Emergency).

As a result of the parents' history, which involved prior orders terminating their parental rights, the Department did not offer T.H. or L.M. rehabilitative services during the time A.L.H. was in its care. RR, pp.14-15. Nonetheless, the Department made efforts to keep A.L.H. with his family. RR, pp.12-13. During the investigation of the report which brought A.L.H. to the Department's attention, the child's paternal Aunt, Maravi Moore, contacted the Department to say that she was willing to take A.L.H. into her home in Arizona. RR, pp. 6, 21, 30-31. The Department subsequently requested a study of Ms. Moore's home from the state of Arizona, the final results of which it received in August of 2014. RR, pp.12-13. Based on those results, the Department requested that the court place A.L.H. with his aunt, and facilitated a visit between the two on the day the case was tried. RR, pp.12-13, 17, 20.

By the time of trial, T.H. had executed an Irrevocable Affidavit of Voluntary Relinquishment of Parental Rights and, according to Zachmeyer's testimony, wanted the court to terminate her parental rights to A.L.H. P-Ex 1, p. 93; RR, p.8. In addition, during the ten months A.L.H. was in the Department's care, L.M. never attended a court hearing, never sent anything for the care or support of his

son, and never requested nor attended a visit with A.L.H. RR, p.10, 11-12. Neither of A.L.H.'s parents was present at trial. RR, p.7.

The case was tried on December 3, 3014, when A.L.H. was fifteen months old. RR, pp.1, 78; CR 4-5. Zachmeyer was the first witness to testify. RR, pp.7. She stated that, at that time, A.L.H. had been in the Department's care for ten months and had been residing with his current foster family since the previous May. RR, p.7, 12. She stated he was bonded to his foster parents and thriving in their home. RR, p.18. She described the foster home as safe and loving, that A.L.H. was happy and well cared for there, and said the foster parents would provide a good adoptive home for the child. RR, p.18, 23.

It was Zachmeyer's understanding that T.H., though not present, was asking the court to terminate her parental rights to A.L.H. on the basis of the voluntary, irrevocable affidavit of relinquishment that T.H. executed.[3] RR, p.7. Zachmeyer also testified that L.M., who also was not present, had been shown to be A.L.H.'s father on the basis of a DNA sample that was collected from L.M.'s sister, Ms. Moore. RR, p.8. It was the Department's goal for Ms. Moore to adopt A.L.H. RR, p.9.

---

[3] The Department placed T.H.'s Irrevocable Affidavit of Voluntary Relinquishment of Parental Rights in evidence as Petitioner's Exhibit 1. There were no objections to its admission, and no other evidence was presented by any party regarding this affidavit.

Zachmeyer stated that, though she had never seen L.M. in person, she had some contact with him during the case. RR, p.9. Her most recent contact with him was during the preceding month when L.M. called her on the phone. *Id*. During that conversation, L.M. informed Zachmeyer that he was not a citizen of the United States, that the laws of this country did not apply to him, and that the Department should give his children back. *Id*. Zachmeyer subsequently indicated the Department had concerns about L.M.'s mental health. RR, pp.9-10. She testified that he had not requested to have nor came to any visits with A.L.H., had not provided the Department with anything for A.L.H.'s care or support during the pendency of the case, and, though he came to court on one occasion, did not attend any of the hearings in the case. RR, pp.10, 11-12.

Zachmeyer stated that L.M. had a total of four children with T.H., and that all of those children were placed in the Department's care. *Id*. She said that the three children born before A.L.H. came into care as a result of T.H.'s drug use. *Id*. Similarly, she described that A.L.H. was placed in the Department's conservatorship because of concerns that T.H., "was trying to evade the urine drug screen by trying to clean her system with cayenne pepper," and refused to submit to a hair follicle drug test. RR, p.11. Zachmeyer also testified that, though L.M. was not present when A.L.H. was born, L.M. knew about the child's birth and had reason to believe that leaving A.L.H. with his mother would place the child in

physical or emotional danger. RR, p.11. Nonetheless, L.M. did nothing to alleviate that concern. *Id.* It was Zachmeyer's belief that L.M. knowingly allowed A.L.H. to remain in a dangerous environment, and constructively abandoned the child during the time A.L.H. was in the Department's care. RR, p.14.

According to Zachmeyer, the Department identified A.L.H.'s aunt as a possible placement for the child sometime in May of 2014. RR, p.12. Subsequently, the Department requested a study of Ms. Moore's home be conducted in Arizona, the results of which the Department received on August 12, 2014 approximately four months before trial. *Id.* After reviewing the study, the Department approved it and sought the placement of A.L.H. with his aunt. RR, pp.12-13. It also facilitated a visit between Ms. Moore and A.L.H. on the morning of trial. RR, p.13, 17, 20. Zachmeyer described that everything went fine at the visit and that it was "very appropriate." *Id.* She said that it was the Department's request of the court that A.L.H. be placed with Ms. Moore. RR, p.14.

She then testified she believed that terminating L.M. and T.H.'s parental rights was in A.L.H.'s best interest. RR, p.15. She described that the parents' conduct showed a history of ongoing drug use and mental health issues, and that the parents did nothing during the case to mitigate the risk posed to A.L.H. by their conduct. RR, p.15. Rather, Zachmeyer testified it was in A.L.H.'s best interest to

be placed with his aunt, so that he could grow up with and know his biological family. *Id*.

The next witness to testify was Ms. Moore, A.L.H.'s paternal aunt. RR, p.30. Ms. Moore said she found out that A.L.H. was in the Department's custody in January of 2014, during the investigation which led to the child's removal from his parents' care. *Id*. She contacted the Department and told the investigator that she was available to care for the child. *Id*. She explained that she was unaware that she was allowed to visit A.L.H. until later in the case when the court asked her to provide a DNA sample for genetic testing. RR, p.31.

Ms. Moore testified that she had "little to no contact" with L.M., and said she would not allow L.M. to be involved in A.L.H.'s life. RR, p.36. She said she was aware that L.M. had problems with drugs, that he used crack and cocaine, and that he had been to jail though she was not certain why. RR, p.39. She described that, before the Department was involved, A.L.H. had to be cared for by an adult other than T.H. or L.M. because at one point both parents were in jail. RR, pp. 44-45. When asked what she would do if either of A.L.H.'s parents, "decided to try to come back into [A.L.H.'s] life," Ms. Moore responded, "No. I would not allow it. Once he is with me, he is considered my son, and just like my other two, I would protect him…" RR, p.36. She said that, "though my brother wasn't responsible for doing the right thing, I want to do the right thing." RR, p.37.

She testified further that she was only aware of two of her brother's children, including A.L.H., and was only able to obtain information about their well-being by contacting the Department because it was her understanding that both were involved with the Department from birth.  RR, pp.41-42.  She said a grandmother had adopted one of the children, and would not speak to Ms. Moore or let Ms. Moore see the child because, "[the grandmother] doesn't want anything to do with my brother."  RR, p.42, 44.  Regarding another of A.L.H.'s siblings, a girl, Ms. Moore was told that the judge would only consider her for placement if L.M. took a DNA test, which he failed to do.  *Id*.  When Ms. Moore offered to take a DNA test herself, she said the judge would not consider it, "because of what my brother did in court."  RR, p.43.

Ms. Moore explained that she was not close to either of her brothers, and does not communicate with them other than on holidays.  RR, p.49-50.  When asked to explain why, she said:

> "To me, you should do everything you can to provide for your children.  And when you're not doing that, I have a problem with that.  And those responsibilities always fall on me.  And I'm contacting the parent and the mother, actually, and financially I have been provider for those kids."

> RR, p.50.

Ms. Moore then clarified that she was describing both of her brothers, and said she provided financial support for both of their children.  *Id*.

The next witness to testify was A.L.H.'s foster mother. RR, p.53-54. She said that A.L.H. had been in her home for a little over six months, and that she and her husband wanted to adopt him. RR, p.54. She felt that he had bonded to her and her husband, and had grown and matured drastically while in their home. *Id.* She felt that it would harm A.L.H.'s well-being were he to be removed from their home after having lived there for six months. RR, p.55. She described that they were taking A.L.H. to all of his medical appointments and to a therapist to make sure he was bonded and growing appropriately for his age. *Id.* When he first came to their care, the foster mother testified that he cried all the time, and had a persistent cough related to pertussis as well as seasonal allergies. RR, p.59. Since that time, she said he no longer cries all the time and is a happy little boy. *Id.*

The last witness to testify was A.L.H.'s therapist, Connie Patterson. RR, p.63. She stated that she provides therapy to post-adopt and foster children on a contractual basis with the Department. RR, p.63-64. She first met with A.L.H. and his foster parents on July 23, 2014, and in total met with them five or six times for an hour on each visit. RR, pp.63-64. She said it was her opinion that A.L.H. was showing a secure attachment to his foster parents. RR, p.65-66. She also described that the foster parents provided a good, safe, and loving environment for A.L.H. and it was her recommendation that he stay in their home. RR, p.68.

After the close of testimony, the trial court terminated T.H.'s parental rights under section 161.001(1)(K) of the Texas Family Code and L.M.'s rights under sections 161.001(1)(D) and (N). Tex. Fam. Code Ann. §§ 161.001(1)(D), (K), (N) (West 2008). RR, p.82. The court took the issue of whether to place A.L.H. with his aunt or his foster parents under advisement. *Id.* It signed its decree on December 17, 2014 reflecting the above grounds for termination of the parents' rights, as well as the finding that termination was in A.L.H.'s best interest under section 161.001(2) of the Texas Family Code, and named the Department A.L.H.'s sole managing conservator. CR 123; Tex. Fam. Code Ann. §161.001(2) (West 2008). L.M. filed his notice of appeal on December 24, 2014, and T.H. filed hers on December 31, 2014. CR 150, 162.

## SUMMARY OF ARGUMENT

This brief responds to the contentions raised in the appellant Mother, T.H.'s, as well as the appellant father, L.M.'s appeals. T.H.'s arguments are that there was insufficient evidence to support the termination of her parental rights under subsection (K) of section 161.001(1) of the Texas Family Code. In support, her brief presents that there was no evidence in the record showing that she voluntarily executed the affidavit of relinquishment of her parental rights, which was the basis for the trial court's termination of those rights. She also contends that there was insufficient evidence supporting that termination of her rights was in the child's

best interest. Both of these arguments misapprehend the law applicable to the court's findings and fail to acknowledge the evidence supportive of those findings.

First, while the Department met its burden of proof under subsection (K), T.H. failed to meet hers. Cases which have analyzed similar challenges have held that, where the Department places in evidence an affidavit of relinquishment which meets the requirements of the Texas Family Code, it presents prima facie evidence of the validity of the affidavit. *See Montes v. Dep't of Family & Protective Services*, 01-10-00643-CV, 2011 WL 2089721, at *3 (Tex. App.—Houston [1st Dist.] May 19, 2011, no pet.); *see also Denman v. Alternatives In Motion,* 14-99-01262-CV, 2001 WL 40350, at *2 (Tex. App.—Houston [14th Dist.] Jan. 18, 2001, no pet.); Tex. Fam. Code Ann. §161.103 (West 2008) (setting forth the legal requirements for a valid affidavit of relinquishment of parental rights). In order to attack the affidavit, the affiant must show, by a preponderance of the evidence, that its execution was the result of fraud, duress, or coercion. *Id.*; *see also* Tex. Fam. Code Ann. §161.211(c) (West 2008) (providing that an attack on such an affidavit is limited to issues relating to fraud, duress, or coercion).

In this case, the Department placed in evidence as Petitioner's Exhibit 1, the mother's Irrevocable Affidavit of Voluntary Relinquishment of Parental Rights. The affidavit comports with the requirements set forth in section 161.103 of the Family Code, its language states it was voluntarily executed, and the Department's

caseworker presented evidence at trial, in the mother's absence, that it was the mother's desire that the trial court terminate her parental rights on the basis of the affidavit. The mother's attorney presented no objection to the admission of the affidavit nor to the caseworker's testimony. And, as acknowledged in T.H.'s brief, there was no other evidence presented at any time, either at trial or at a hearing on a motion for new trial, supporting that the affidavit was produced by fraud, duress, or coercion as required. Given this record, the appellant mother's brief presents no basis for finding error in the trial court's subsection (K) finding.

The trial court's best interest finding in support of the termination of T.H.'s rights is similarly supported by the record. First, previous courts, including this one, have held that a relinquishment affidavit is itself sufficient evidence to support that termination of the parent's rights is in the child's best interest. *Brown v. McLennan County Children's Protective Services,* 627 S.W.2d 390 (Tex. 1982); *In re A.G.C.*, 279 S.W.3d 441, 452 (Tex. App.—Houston [14th Dist.] 2009, no pet.) *citing Brown*, 627 S.W.2d 390; *Denman v. Alternatives In Motion*, 14-99-01262-CV, 2001 WL 40350, at *2 (Tex. App.—Houston [14th Dist.] Jan. 18, 2001, no pet.). The same rule should be applied in this case where the affidavit itself states that termination of T.H.'s rights is in A.L.H.'s best interest, T.H. failed to appear at trial to object to the affidavit or present any evidence attacking it, and the

Department presented uncontested evidence that it was the mother's desire to have her parental rights terminated on the basis of the affidavit.

Nonetheless, the evidence was that A.L.H. was removed from his parents' care as a result of T.H.'s drug use, that T.H. and L.M. had three previous children, all of whom had also been removed from their care because of T.H.'s involvement with drugs, that T.H. did little during this case to show she had improved her conduct, but executed an affidavit indicating she wished to relinquish her rights to A.L.H., and failed to appear at trial. In contrast, the record shows the Department provided A.L.H. with a foster family who provided a loving, stable home for A.L.H., and who wished to adopt the child. It also located a paternal relative – A.L.H.'s aunt Ms. Moore, and conducted a study of her home which indicated she was also willing and able to care for the child. Thus, the Department presented evidence showing it was able to provide A.L.H. with stability and permanency, whereas A.L.H.'s mother provided nothing to contest this evidence. The record therefore contains sufficient support for the trial court's finding that terminating T.H.'s parental rights was in A.L.H.'s best interest.

L.M.'s appeal presents two issues regarding the sufficiency of the evidence to support the trial court's termination of his rights under sections 161.001(D) and (N) of the Texas Family Code. Under section (N), which allows for termination where a parent constructively abandons a child, L.M.'s brief contends first, that the

evidence failed to reflect that he was unable to provide the child with a safe environment because A.L.H.'s aunt was available to care for the child; and second that the Department failed to make reasonable efforts to return the child because it did not provide L.M. with a family service plan.

As to L.M.'s first argument, his brief presents no authority for the proposition that a parent may avoid a subsection (N) finding where a relative is available to care for the subject child. Cases have held that, when a parent is incarcerated, he may show his ability to provide the child with a safe environment by making arrangements with a surrogate caregiver who agrees to provide care on the parent's behalf. *In re. D.S.A.*, 113 S.W.3d 567, 573-74 (Tex. App.—Amarillo 2003, no pet.); *see also In re. V.D.A.*, 14-14-00561-CV, 2014 WL 7347776, at *9 (Tex. App.—Houston [14th Dist.] December 23, 2014, no pet.) ("An incarcerated parent may provide a safe environment for a child through family members."). However, there was no evidence indicating that L.M. was incarcerated at the time of trial, or otherwise prohibited or rendered incapable of providing A.L.H. with a safe environment. Moreover, there was nothing in the record indicating that the relative, Ms. Moore, was identified as a result of any effort engaged in by L.M., or that she was agreeing to care for A.L.H. on L.M.'s behalf. Rather, her testimony was that she had very limited contact with L.M., that if A.L.H. were placed with her she would not allow L.M. to come back into the child's life, and would protect the child from L.M. Given the evidence that L.M. attended none of the hearings during this case, did not visit or request a visit with A.L.H.

during the ten months the child was placed with the Department, did not provide any support for A.L.H.'s care, and failed to appear at trial, there was sufficient evidence presented by the Department that L.M. demonstrated little involvement or interest in A.L.H.'s welfare, amply showing an inability to provide the child with a safe environment.

L.M.'s second argument – that the Department failed to make reasonable efforts to return A.L.H. to L.M.'s care – should also fail.  Though true that the Department did not provide L.M. with a family service plan, previous cases have demonstrated that such a failure does not, in itself, indicate a lack of the reasonable efforts required by subsection (N). *See In re. D.A.*, No. 02-09-00460-CV, 2010 WL 3618718, at * 3-4 (Tex. App.—Fort Worth September 16, 2010, no pet.) (mem.op.) (affirming termination of appellant father's rights though Department provided no family service plan); *In re. B.S.T.*, 977 S.W.2d 481 (Tex. App.—Houston [14th Dist.] 1998, no pet.), overruled on other grounds by *In re. C.H.*, 89 S.W.3d 17, 26 (Tex. 2002).  In this case, L.M.'s paternity as to A.L.H. was not established when the child came into the Department's care. Nonetheless, the Department served L.M. with its petition, and requested that the court conduct genetic testing to determine L.M.'s paternity. The court's orders reflect the continuing efforts the Department made to that end. On February 13, 2014, the court ordered L.M. to submit to paternity testing. However, the record reflects he failed to comply and it was only when the Department was able to work with A.L.H.'s paternal aunt that the court obtained

the evidence needed to adjudicate L.M.'s paternity. On October 7, 2014, the court ordered Ms. Moore to submit to genetic testing. Ms. Moore testified that she relied on the Department's assistance to get the test completed, and on November 18, 2014, the court entered an order establishing that L.M. was A.L.H.'s father.

In addition, the Department made significant efforts to return A.L.H. to his family by conducting a study of L.M.'s sister's home, and subsequently requesting at trial that A.L.H. be placed with her. Considering the evidence in the record that L.M. did not see or try to see A.L.H. for the ten months this case was pending, and attended none of the hearings in the case, including trial, it was reasonable for the Department to turn to a relative in order to return A.L.H. to his family because L.M.'s conduct supported that he had little interest himself in the child's return. As efforts similar to those the Department made in this case have been held to be sufficient in previous cases where fathers show themselves not to be involved in their child's life, the trial court's termination of L.M.'s parental rights under subsection (N) should be affirmed.

Lastly, the court need not review the evidence that supports the trial court's subsection (D) finding that L.M. knowingly allowed A.L.H. to remain in endangering conditions or surroundings because the evidence amply supports termination under subsection (N), and only one of the statutory grounds under section 161.001(1) is necessary to support termination of L.M.'s parental rights.

Nonetheless, should the court find review of this ground necessary, the record demonstrates sufficient evidence in support of subsection (D) as well. That evidence included the Department's testimony, through Zachmeyer, that L.M. knowingly allowed A.L.H. to remain in T.H.'s care, even though she had demonstrated a history of drug use endangering to her previous children. The record shows that L.M. and T.H. had three children previous to A.L.H., and that all three were removed from their parents' care as a result of T.H.'s drug use. When trial occurred in this case, none of their three previous children were in the parents' care. Zachmeyer also testified that, though L.M. was not present at A.L.H.'s birth, he knew of the child. In addition to this evidence was testimony from Ms. Moore, indicating that L.M.'s conduct created an endangering environment for A.L.H. She described that L.M. had a problem with drugs, that he used crack cocaine, and that he also had engaged in criminal conduct resulting in his incarceration before the Department became involved with A.L.H. She could not identify the crime which led to L.M.'s incarceration, but stated that he was in jail at the same time that T.H. was incarcerated, necessitating that another adult provide care for A.L.H. This evidence was uncontested and, taken together, supported the trial court's subsection (D) endangerment finding. As such, the trial court's termination of L.M.'s parental rights should be affirmed and the arguments in L.M.s brief overruled.

## ARGUMENT AND AUTHORITIES

**REPLY POINT ONE: There was sufficient evidence to support the trial court's termination of the appellant Mother's parental rights under section 161.001(1)(K) of the Texas Family Code.**

### 1. Applicable Law, and Scope of Review

Section 161.001 of the Family Code was the statutory basis by which the Department sought parental termination. CR 2; Tex. Fam. Code Ann. §161.001 (West 2008). Accordingly, Section 161.001 of the Family Code is the focus of the challenges the parents have brought in this appeal. Section 161.001 of the Family Code authorizes termination of parental rights on a finding by clear and convincing evidence that (1) the parent committed at least one of several acts or omissions listed under section 161.001(1) of the Family Code and (2) that termination is in the child's best interest. Tex. Fam. Code Ann. §161.001 (West 2008).

With respect to the applicable standard of review, this court's standard considers the clear and convincing burden of proof at trial. *See In re C.H.,* 89 S.W.3d 17, 25 (Tex. 2002) ("burden of proof at trial necessarily affects appellate review of the evidence."); *In the Interest of J.F.C.,* 96 S.W.3d 256, 265-66 (Tex. 2002). In that connection, both legal and factual sufficiency challenges consider the standard of proof for clear and convincing evidence by considering whether the evidence is such that a fact-finder could reasonably form a firm belief or conviction about the truth of the State's allegations. *See In re C.H.*, 89 S.W.3d at p.

25 (Tex. 2002); *In re J.F.C.,* 96 S.W.3d at 265-66; Tex. Fam. Code Ann. §101.007 (West 2008).

In *In re J.F.C.* the Supreme Court explained that in light of the identical inquiries made to the clear and convincing standard, the distinction between legal and factual sufficiency when the burden of proof is clear and convincing evidence may be a fine one in some cases, but that there is a distinction in how the evidence is reviewed. 96 S.W.3d at p. 266. To clarify that distinction, the court explained that in a legal sufficiency review, a court should look at all of the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true, giving appropriate deference to the trier of fact. *Id.* In a factual sufficiency review, a court of appeals must give due consideration to evidence that the fact-finder could reasonably have found to be clear and convincing and with respect to disputed evidence, a court should consider whether the disputed evidence is such that a reasonable fact-finder could not have resolved that disputed evidence in favor of its finding. *Id.* If, in light of the entire record, the disputed evidence that a reasonable fact-finder could not have credited in favor of the finding is so significant that a fact-finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. 96 S.W.3d at 266-67.

**2. Termination of the appellant Mother's rights was warranted where her affidavit of relinquishment was executed in accordance with what is required by law, it was admitted into evidence without objection, and the mother presented no evidence that it was made involuntarily as she claims on appeal.**

In her first issue the Appellant Mother, T.H., contends that the evidence was legally and factually insufficient to support the trial court's termination of her parental rights under Tex. Fam. Code Ann. §161.001(1)(K). This provision allows a court to order termination of a parent-child relationship if the court finds by clear and convincing evidence that a parent has executed an unrevoked or irrevocable affidavit of relinquishment of parental rights in accordance with Chapter 161 of the Texas Family Code. Tex. Fam. Code Ann. §161.001(1)(K) (West 2008). Section 161.103 sets forth what such an affidavit must contain, and section 161.211 provides that a direct or collateral attack on an order terminating parental rights based on an affidavit of relinquishment is limited to issues relating to fraud, duress, or coercion in the execution of the affidavit. Tex. Fam. Code Ann. §§ 161.103, 161.211 (West 2008).

Moreover, courts addressing the issue T.H. raises in this appeal have held that, implicit in subsection (K)'s requirements is that an affidavit of relinquishment of parental rights must be voluntarily executed. *Montes v. Dep't of Family & Protective Services*, 01-10-00643-CV, 2011 WL 2089721, at *3 (Tex. App.— Houston [1st Dist.] May 19, 2011, no pet.). The proponent of termination carries

the burden to establish by clear and convincing evidence that the affidavit was executed according to the requirements set forth in section 161.103. *Id.* An affidavit that meets these requirements provides prima facie evidence that it is valid, and the admission of such an affidavit into evidence shifts the burden to the affiant to show, by a preponderance of the evidence, that its execution was the result of fraud, duress, or coercion. *Id.*; *see also Denman v. Alternatives In Motion*, 14-99-01262-CV, 2001 WL 40350, at *2 (Tex. App.—Houston [14th Dist.] Jan. 18, 2001, no pet.). Where the affiant presents no evidence of any wrongdoing or irregularity in the execution of the affidavit, a trial court does not err in terminating a parent's rights under subsection (K). *See Denman*, 2001 WL 40350 at *2 (holding it was not error to deny a motion to revoke an affidavit of relinquishment where the affiant failed to establish any of the recognized grounds for doing so); *see also In re F.L.I.*, 01-97-01192-CV, 1998 WL 418094, at *1 (Tex. App.—Houston [1st Dist.] July 23, 1998, no pet.) (affirming termination under subsection (K) where the appellant produced no evidence of the duress she claimed occurred).

In this case, the Department met its burden by placing in evidence T.H.'s affidavit of relinquishment. At trial, the Department requested admission, as Petitioner's Exhibit 1, of an Irrevocable Affidavit of Voluntary Relinquishment of Parental Rights executed by T.H. RR, pp.7-8; s*ee also* P-Ex 1, RR, p.93-97. T.H.

was not present on the day of trial, but her attorney stated on the record there was no objection to the admission of the affidavit into evidence. RR, pp. 7-8. The court noted that, "P1 is admitted." RR, p.8. A review of the affidavit shows that it conforms to the requirements of section 161.103 of the Family Code. *See* P-Ex 1, RR, p.93 and Tex. Fam. Code Ann. §161.103 (West 2008). Moreover, at trial, the Department's caseworker provided testimony, without objection, that it was Zachmeyer's understanding that T.H. was asking the trial court to terminate her parental rights based on her execution of the affidavit of relinquishment. RR, p.8. No other evidence appears in the record regarding the affidavit, and neither the mother nor her attorney presented any evidence either at trial or in a motion for new trial supporting that T.H.'s execution of the affidavit was involuntary or produced by fraud, duress, or coercion. *See* Tex. Fam. Code Ann. §161.211(c) (West 2008).

As has been held before, the facts presented in this case are sufficient to support the trial court's termination of T.H.'s parental rights on the basis of her relinquishment affidavit. *See Denman*, 14-99-01262-CV, 2001 WL 40350, at *2. In *Denman*, a mother sought to revoke an affidavit of relinquishment that she had executed, and alleged that the appellee child-placing agency engaged in fraud and coercion. *Id.* at *1. However at the hearing on her motion, she presented no evidence of any wrongdoing and the record revealed no evidence of such conduct.

*Id.* This court held, "As appellant failed to establish any recognized grounds for setting aside the affidavit of relinquishment, the trial court did not err in denying her motion." *Id.* Similarly, in *In re. F.L.I.*, the appellant mother sought review of the termination of her rights on the basis that her affidavit of relinquishment was not voluntarily signed, but was the result of duress. 1998 WL 418094, at *2. However, as was true in the present case, the mother was not present at the hearing at which her rights were terminated, and she failed to present evidence of duress at the hearing on her motion for new trial. *Id.* The court in that case stated, "The appellant brought forth no evidence to prove fraud, duress, misrepresentation, overreaching, or involuntariness," and it overruled her complaint on appeal. *Id.; see also Montes v. Dep't of Family & Protective Services*, 01-10-00643-CV, 2011 WL 2089721, at *3 (Tex. App.—Houston [1st Dist.] May 19, 2011, no pet.) (affirming termination under subsection (K) where appellant father presented evidence he felt pressured, but failed to establish duress or other wrongdoing in the execution of his affidavit of relinquishment).

In this case, as acknowledged in her brief, T.H.'s appeal points to no evidence nor makes any argument that there was any fraud, duress or coercion in the execution of her affidavit. Appellant T.H.'s Brief, pp.29-30. Rather, the argument her brief presents is that there was insufficient evidence to show that her affidavit was voluntarily executed. *Id*. at p.30, FN 3. This argument fails to

acknowledge the evidence of the affidavit itself – which includes the statement, "I freely, voluntarily, and permanently give and relinquish…all my parental rights," – or that the admission of the affidavit into evidence "provide[d] prima facie evidence that it is valid." *Montes*, 01-10-00643-CV, 2011 WL 2089721, at \*3. Once the Department placed the affidavit into evidence, it was T.H.'s burden to establish her execution of it was the result of fraud, duress, or coercion as required by 161.211(c). Tex. Fam. Code Ann. §161.211(c) (West 2008). Just as in the cases cited above, T.H. produced no such evidence and her brief acknowledges as much. *See Denman*, 14-99-01262-CV, 2001 WL 40350, at \*2; *In re of F.L.I.*, 01-97-01192-CV, 1998 WL 418094, at \*1. Therefore, her argument on this point should be overruled.

**3. There was sufficient evidence supporting that termination of the appellant Mother's rights was in the child's best interest where she executed an affidavit of relinquishment, averred in the affidavit that termination was in the child's best interest, failed to appear at trial or present any evidence, and the Department's plans for the child indicated his best interest would be served by terminating the Mother's rights.**

T.H.'s second argument is that the trial court had insufficient evidence to support its conclusion that termination of T.H.'s parental rights was in A.L.H.'s best interest. Appellant T.H.'s brief, p.35. The terms "best interest of the child" used in section 161.001(2) of the Family Code is not statutorily defined; however, the Supreme Court in *Holley v. Adams,* 544 S.W.2d 367, 371-72 (Tex. 1976), recognized a non-exhaustive list of factors that have been considered in

determining a child's best interest. Those factors include: (1) the child's desires; (2) the child's emotional and physical needs, now and in the future; (3) the emotional and physical danger to the child, now and in the future; (4) the parental abilities of the individual seeking custody; (5) the programs available to assist these individuals in promoting the child's best interests; (6) the plans for the child by the individual or the agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the parent's acts or omissions. *Id*.

Preliminarily, in cases in which a parent has executed an Irrevocable Affidavit of Voluntary Relinquishment of Parental Rights, as T.H. did here, courts have held that such an affidavit is itself sufficient evidence to support that termination of the parent's rights is in the child's best interest. *See Brown v. McLennan County Children's Protective Services,* 627 S.W.2d 390 (Tex. 1982) ("we find it was the intent of the Legislature to make such an affidavit of relinquishment sufficient evidence on which the trial court can make a finding that termination is in the best interest of the children."); *In re A.G.C.*, 279 S.W.3d 441, 452 (Tex. App.—Houston [14th Dist.] 2009, no pet.) *citing Brown*, 627 S.W.2d 390; *Denman v. Alternatives In Motion*, 14-99-01262-CV, 2001 WL 40350, at *2 (Tex. App.—Houston [14th Dist.] Jan. 18, 2001, no pet.) (finding mother's

affidavit of relinquishment sufficient evidence to support best interest finding). The same rule should apply in this case where the mother executed her affidavit of relinquishment, did not appear at trial, there was no objection made by mother's counsel to the entry of the affidavit into evidence, and the affidavit itself states, "Termination of the parent-child relationship is in the best interest of the child." P-Ex 1, RR, pp.93, 95. Moreover, the Department's caseworker provided undisputed testimony that "the mother is asking the court to terminate her parental rights based on her voluntary irrevocable affidavit of relinquishment." RR, p.8. The Department contends that this evidence alone was sufficient to support the trial court's best interest finding.

Nonetheless, there is additional evidence in the record which supports that finding. The evidence showed that when A.L.H. was placed in the Department's care he was T.H.'s fourth child and that all of her children had been removed from her custody as a result of her drug use. RR, p.10. Zachmeyer testified that during the Department's investigation in this case, T.H. made attempts to evade the Department's drug testing, and that conduct in combination with the history of her previous cases with the Department instigated the removal of A.L.H. from her care. RR, p.11. Moreover, Moore testified that, before the Department became involved with A.L.H., there was a time when both T.H. and L.M. were in jail, such that A.L.H. was placed in the care of another adult. RR, pp.44-45. This evidence

supported that T.H. lacked the ability to safely parent, engaged in acts which indicated improper parenting, and posed a danger to A.L.H under the third, fourth, and eighth *Holley* factors. *Holley,* 544 S.W.2d at 371-72.

The record additionally showed that the Department put in place appropriate plans for the child that met his emotional and physical needs under the second and sixth *Holley* factors. *Id.* By the time of trial, A.L.H. had been living with foster parents to whom he had bonded and who the record demonstrates provided him with a loving, supportive home. Zachmeyer testified that A.L.H. was bonded to his foster parents, was thriving in their home, described the home as safe and loving, and stated the foster parents would provide A.L.H. with a good, adoptive home for the child. RR, p.18, 23. In addition, A.L.H.'s foster mother testified at trial, and stated that she and her husband wished to adopt A.L.H., that he had bonded to her and her husband, and that they had witnessed A.L.H. grow and mature "drastically" while in their home. RR, pp.54. She described that when A.L.H. first came into their care, he cried all the time and had a persistent cough related to pertussis and seasonal allergies. RR, p.59. However, by the time of trial his foster parents had met all of his medical needs and he was a happy little boy. *Id.* A.L.H's therapist echoed the foster mother's testimony, and stated also that the foster parents provided a good, safe and loving environment for A.L.H. RR, p.68. In addition to A.L.H.'s foster parents, the Department also identified the child's

paternal aunt as a placement for the child. RR, p.12-13. The Department completed a home study on Ms. Moore and the evidence showed she was employed, and had made plans to take A.L.H. into her home. RR, pp.36-37. The evidence therefore supported that the Department provided A.L.H. with stable options that would meet his needs. *Holley*, 544 S.W.2d at 371-72.

In contrast, at trial, Zachmeyer testified that the parents' conduct showed a history of ongoing drug use which neither parent did anything to mitigate. RR, p.15. Zachmeyer therefore concluded that terminating the parents' rights was in A.L.H.'s best interest. Id. Neither of A.L.H.'s parents appeared at trial and the only evidence regarding T.H.'s plans or desires for the child was her affidavit of relinquishment along with the caseworker's testimony indicating she was asking the trial court to terminate her parental rights. RR, pp.7-8.

On this record, the trial court had sufficient evidence from which to conclude that termination of T.H.'s parental rights was in A.L.H.'s best interest as required by section 161.001(2) of the Family Code. Tex. Fam. Code Ann. §161.001(2) (West 2008). The arguments in T.H.'s brief to the contrary should be overruled and the trial court's termination of T.H.'s parental rights should be affirmed.

**REPLY POINT TWO: There was sufficient evidence to support the trial court's termination of the appellant Father's parental rights under section 161.001(1)(N) of the Texas Family Code.**

> **1. The fact that the Department named a relative who was able to care for A.L.H. did not preclude the trial court's finding that L.M. lacked the ability to provide the child with a safe environment under subsection (N) where L.M. failed to participate in any meaningful way in the case, was not incarcerated, and there was no evidence that the relative's willingness to provide care resulted from any arrangement with L.M.**

In L.M.'s first point on appeal, his brief contends that there was insufficient evidence to support the trial court's finding that L.M. constructively abandoned A.L.H., warranting termination of L.M.'s parental rights under section 161.001(1)(N) of the Texas Family Code. Tex. Fam. Code Ann. §161.001(1)(N) (West 2008). A parent constructively abandons a child when (1) the child has been in the permanent or temporary managing conservatorship of the State or an authorized agency for not less than six months, (2) the State or the authorized agency has made reasonable efforts to return the child to the parent, (3) the parent has not regularly visited or maintained significant contact with the child, and (4) the parent has demonstrated an inability to provide the child with a safe environment. S*ee* Tex. Fam. Code Ann. § 161.001(1)(N) (West 2008); *In Interest of V.D.A.*, 14-14-00561-CV, 2014 WL 7347776, at *3 (Tex. App.—Houston [14th Dist.] Dec. 23, 2014, no pet.).

In his brief, L.M. concedes the Department sufficiently proved that A.L.H. was in the Department's care for the six month period required by the statute as

well as that L.M. did not regularly visit or maintain significant contact with A.L.H. Appellant L.M.'s Brief, p.25. His argument is that, because the Department located a relative willing to care for A.L.H., the trial court was precluded from finding that L.M. demonstrated an inability to provide a safe environment for the child. *Id.* at 25-26. In addition, his brief contends that the Department failed to make reasonable efforts to return A.L.H. under the second element of subsection (N) because it did not provide L.M. with a family service plan. *Id.* at 26-28. However, because these arguments both misconstrue the law applicable to a finding under (N), they should fail.

As to L.M.'s first argument under this point, his brief presents no authority for the proposition that the existence of a relative willing to care for a child precludes a finding that a parent has demonstrated an inability to care for that child under the facts presented by this case. It is true that where a parent is incarcerated courts have held that, "the incarcerated parent may work through surrogates, such as relatives, spouses, or friends to fulfill that obligation." *In re. D.S.A.*, 113 S.W.3d 567, 573-74 (Tex. App.—Amarillo 2003, no pet.); *see also In re. A.S.*, 261 S.W.3d 76 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) *citing In re. D.S.A.*, 113 S.W.3d at 573; *also In re. V.D.A.*, 14-14-00561-CV, 2014 WL 7347776, at *9 (Tex. App.—Houston [14th Dist.] December 23, 2014, no pet.) ("An incarcerated parent may provide a safe environment for a child through family members."). However,

- 30 -

there is no evidence showing that L.M. was incarcerated during the time that A.L.H. was in the Department's care, and L.M.'s brief fails to cite to any case indicating that an un-incarcerated parent may rely on a relative's ability to supply a safe environment for a child to substitute for the parent's inability to do so.

Nonetheless, assuming without conceding that a parent who is not imprisoned may demonstrate an ability to provide a child with a safe environment by making arrangements with a relative caregiver, the record here amply demonstrates that L.M. did not do so. In cases where an incarcerated parent has made the claim that L.M. makes here – that there existed a relative able to care for the child – courts have made plain that the parent themselves must make the arrangement with a caregiver who is willing to play the role of surrogate parent to the child. *See In re. D.S.A.*, 113 S.W.3d at 573 *citing In re. R.L.T.*, No. 07-02-0332-CV, slip op. at 3-4, 2003 WL 21458782 (Tex. App.—Amarillo June 24, 2003, no pet.). In *In re. D.S.A.*, the appellant father argued that subsection (N) should not apply to him because the fact that he was incarcerated precluded the Department from showing, in relevant part, that the parent "demonstrated an inability to provide the child with a safe environment." *Id.* In rejecting this proposition, the court in that case stated:

> …it is quite conceivable that one in prison may still be able to [provide the child a good environment] by, at the very least, leaving the ward in the capable hands of a relative, friend or spouse. See In re R.L.T., No. 07–02–0332–CV, slip op. at 3–4, 2003 WL 21458782,

2003 Lexis 5289 (Tex. App.—Amarillo June 24, 2003) (wherein the parent presented evidence that he could leave the child with a relative) If such could be done, then it is conceivable that the State has the ability to relinquish its custody over the youth and, thereby, effectively return the child to the incarcerated parent. At the very least, we cannot say that incarceration renders that possibility impossible. And, it is simply a "cop-out" (in the vernacular of the 70's) for anyone to conclude that prison ipso facto prevents (or relieves) the parent from providing the child a safe environment. Again, the incarcerated parent may be able to work through surrogates, such as relatives, spouses, or friends, to fulfill that obligation. And, if he so arranges and those surrogates agree to the arrangement, it is hard to deny that the parent has taken steps to provide or effectively provided a safe environment.

*Id.* (internal citations omitted).

The *D.S.A.* court's analysis rested, in part, on reasoning applied in *In re R.L.T.* to a different ground for termination that contains a similar element. *See In re R.L.T.*, 07-02-0332-CV, 2003 WL 21458782, at *2. Subsection (Q) allows for termination where a parent knowingly engages in criminal conduct resulting in conviction and imprisonment for no less than two years. Tex. Fam. Code Ann. § 161.001(1)(Q) (West 2008). The (Q) ground includes as an element, as does (N), that a parent be unable to provide care for the child during that period. *Id.*; *see In re. H.R.M.*, 209 S.W.3d 105, 110 (Tex. 2006) ("Subsection Q looks at whether the incarcerated parent will be unable to care for the child…"). Courts have held with subsection (Q) the same thing they have for subsection (N), which is that an incarcerated parent who names a relative capable and willing to care for the child may avoid termination under that ground. *See In re. R.L.T.*, 07-02-0332-CV, 2003

WL 21458782, at *2; *see also, e.g.*, *In re. V.D.A.*, 14-14-00561-CV, 2014 WL 7347776, at *9. However, courts have made clear that it is not simply the existence of a relative which demonstrates the parent's ability to provide for the child, but the parent's ability to make arrangements with that relative, and the relative's willingness to be a proxy for the incarcerated parent. *In re. H.R.M.*, 209 S.W.3d at 110 ("Absent evidence that the non-incarcerated parent agrees to care for the child on behalf of the incarcerated parent, merely leaving a child with a non-incarcerated parent does not constitute the ability to provide care."). The court in *In re R.L.T.* stated it this way:

> Thus, we recognized that if the parent arranged for others to care for the child while he was incarcerated and these others were willing to and capable of caring for the child, then § 161.001(1)(Q) may be inapplicable…Yet, we did not hold that the statute has no application simply because someone or some entity may be available to care for the child by default… To adopt such a proposition would effectively nullify the proviso. In other words, the statute would never have application for the State is always available by default to assume the care of a child abandoned by its parents. Rather, it was and is implicit in our opinion that the surrogate arise through agreement with or arrangement by the incarcerated parent. We indicated as much when we said that "the parent must produce some evidence as to how [the parent] would provide or arrange to provide care for the child during that period" of incarceration, and when the parent does so, then the State must prove that "the arrangement would not satisfy the parent's duty to the child." In short, *the incarcerated parent must show that another is willing to assume his duties and act on his behalf while he cannot act*.
>
> In re R.L.T., 07-02-0332-CV, 2003 WL 21458782, at *2 (Tex. App.— Amarillo June 24, 2003, no pet.) *citing In re Caballero,* 53 S.W.3d 391 (Tex. App.—Amarillo 2001, pet. denied) (internal citations

omitted and emphasis added).

This court has made similar rulings in a case involving section (Q) where, as here, the child's paternal aunt was available to care for the child. *In re D.Z.R.-M.*, 14-13-01084-CV, 2014 WL 1390289, at \*9 (Tex. App.—Houston [14th Dist.] Apr. 8, 2014, no pet.). There was evidence in that case, as there is in this one, regarding the Aunt's plans and ability to care for the child. *Id.* The court found this evidence insufficient to preclude the section (Q) finding, however, stating, "if the Aunt were providing care in these circumstances, she would be doing so on her own behalf, rather than agreeing to assume the Father's obligation to care for the Child while the Father is incarcerated." *Id.* The same reasoning should apply to an (N) ground finding. Otherwise, if a parent could avoid the application of subsection (N) simply because a safe environment is found for the child without the parent's involvement, then the statute would effectively be nullified. More appropriately, as indicated by the court in *In re. D.S.A.*, any arrangement for the substitute care of the child which purports to demonstrate a parent's ability to provide a safe environment should be effected by the parent himself. *In re. D.S.A.*, 113 S.W.3d at 573.

The record in this case is clear that L.M. did not arrange with Ms. Moore to fulfill his obligation to provide a safe environment for A.L.H., nor did Ms. Moore agree to act as parent on L.M.'s behalf. Rather, the evidence reflects that, during the ten months A.L.H. was in the Department's care, L.M. failed to attend any of

the hearings regarding the child, failed to send anything to aid in supporting or caring for A.L.H., did not request any visitation with A.L.H., did not attend any visits with A.L.H., and did not appear at trial. RR, pp.7, 10, 11-12. During the most recent contact L.M. had with Zachmeyer during the month preceding trial, L.M. made no indication that he wanted Ms. Moore to care for A.L.H. in his stead, but rather told Zachmeyer to return his children to him. RR, p.9. Moreover, there is nothing showing that Ms. Moore came to the Department's attention as a possible caregiver through any effort of L.M.'s. Ms. Moore's testimony was that she called the Department in January of 2014, during the investigation of the referral which initiated this case, to offer to provide care for A.L.H. RR, p.30. Nowhere in the record does it show that her offer resulted from an agreement she had with L.M. or that she was willing to care for A.L.H. on L.M.'s behalf. On the contrary, Ms. Moore testified that she was not close to either of her brothers, had little to no contact with L.M., that she would not allow L.M. to "come back into [A.L.H.]'s life," and that she wanted to raise A.L.H., "as [her] son." RR, p.34, 36, 49-50.

Therefore, even presuming that a non-incarcerated parent may rely on a relative to avoid the application of a subsection (N) finding, the fact that Ms. Moore came forward did not demonstrate in any way that L.M. himself was able to provide for A.L.H.'s care. Rather, in light of the evidence presented by the Department that L.M. made no effort to see, contact, or provide any support for

- 35 -

A.L.H. during the ten months the child was placed with the Department, the trial court had ample support for its finding that L.M. made no demonstration of any kind with regard to A.L.H.'s care, much less one of any ability to provide A.L.H. with a safe environment. Given the evidence in the record, the trial court had more than sufficient support for its conclusion that L.M. effectively abandoned A.L.H., and through his complete absence from A.L.H.'s life while the child was placed in foster care, showed he was unable to safely provide for the child.

**2. The record demonstrates sufficient evidence supporting that the Department made reasonable efforts to return the child to L.M. where the Department served L.M. with notice of the case, sought to establish L.M.'s paternity, evaluated possible relative placements, and sought to have the child placed with L.M.'s sister, particularly where L.M.'s conduct indicated he had little interest in his child's return.**

L.M.'s second argument under this point is that there is nothing in the record showing that the Department made reasonable efforts to return A.L.H. to L.M.'s care as required by subsection (N). Appellant's Brief, pp.26-27. In support, his brief cites to the fact that the Department did not provide L.M. with a family service plan. *Id.* However, as previous decisions have shown, the failure to create a service plan does not, in itself, constitute a failure to make reasonable efforts to return the child. *See In re. D.A.*, No. 02-09-00460-CV, 2010 WL 3618718, at * 3-4 (Tex. App.—Fort Worth September 16, 2010, no pet.) (mem.op.) (affirming termination of appellant father's rights though Department provided no family service plan); *In re. B.S.T.*, 977 S.W.2d 481 (Tex. App.—Houston [14th Dist.]

- 36 -

1998, no pet.), overruled on other grounds by *In re. C.H.*, 89 S.W.3d 17, 26 (Tex. 2002). Rather, previous cases demonstrate that where a father makes minimal or no effort with regard to his child, as was reflected by L.M.'s conduct, efforts similar to those the Department made in this case will be deemed reasonable. *Id.*

In affirming termination of the appellant fathers' rights under subsection (N) in both *In re D.A.* and *In re B.S.T.*, the appellate courts noted the limited effort the fathers made to be involved in their children's lives. *In re. D.A.*, 2010 WL 3618718, at * 3-5; *In re. B.S.T*, 977 S.W.2d at 486. In *In re D.A.*, the father knew his son was in the Department's care but never called to inquire about the child, never visited the child, denied he was the father, and did not appear at trial. *In re. D.A.*, 2010 WL 3618718, at * 3-4. In *In re. B.S.T.*, the father did not deny paternity but made no effort to sign an acknowledgment of paternity, visited his children twice in three years, provided no support for the children, and though he appeared at trial he refused to answer any questions. 977 S.W.2d at 483.

In light of the minimal efforts these fathers made, the Department's efforts were held to be reasonable even without the provision of a family service plan. *In re. D.A.*, 2010 WL 3618718, at * 3-5; *In re. B.S.T*, 977 S.W.2d at 486. In *In re D.A.*, the court found the Department's efforts reasonable where the caseworker called the appellant father on one occasion to ask him to go to court, attempted on another occasion to phone the father but found the phone disconnected, and made

two unsuccessful attempts to serve the father. *In re. D.A.*, 2010 WL 3618718, at \*3-4. Similarly, in *In re B.S.T.*, the Department's efforts were reasonable where it conducted a diligent search to locate the father, asked him to sign an affidavit of paternity, and advised the father of possible visitation. 977 S.W.2d 481, 486. In neither of these cases did the Department provide the appellant father with a service plan.

As the Department's efforts in this case were greater than those made in *In re. D.A.* and *In re. B.S.T.*, the evidence here should support that they were reasonable as required by section (N). Just as in the above cases, the Department made efforts to notify L.M. regarding the case. Included in the trial court's file is a citation of service reflecting that the Department served L.M. with its original petition.[4] Moreover, Zachmeyer testified that, though she never saw L.M. in person, she did communicate with him during the case, including in the month leading up to trial. RR, p.9. Furthermore, similar to *In re. D.A.* and *In re. B.S.A.*, when the Department filed its petition, there was nothing establishing that L.M. was A.L.H.'s father. CR 4-5. The Department's petition reflects that, when it was filed, L.M. was only alleged to be A.L.H.'s father. Id. Accordingly, the Department made the request in its petition that the court establish L.M.'s paternity, including

---

[4] Though the citation of service reflecting that L.M. was served with the Department's petition is not included in the record, a request to supplement the record has been made and the citation of service is attached to this brief as Attachment 1.

by utilizing genetic testing if necessary. CR 8. Subsequent court orders demonstrate the Department's continuing efforts in that regard.[5] On February 13, 2104, roughly two weeks after A.L.H. was placed in the Department's care, the court entered an order requiring L.M. to appear for D.N.A. testing. *See* Attachment 2. The second order entered makes apparent that L.M. did not comply with the first. *See* Attachment 2. On October 7, 2014, two months before trial, the court ordered a D.N.A. test for the second time, this time however ordering Ms. Moore to submit to the test. Id. Ms. Moore's testimony reflects that she made attempts to comply with the order, but was only successful with Zachmeyer's assistance. RR, pp.31-32. The following month, on November 18, 2014, approximately two weeks prior to trial, the court signed an order adjudicating L.M. to be A.L.H.'s father. CR 115-17. Zachmeyer testified that it was through Ms. Moore's D.N.A. test that L.M.'s paternity was established, supporting that L.M. made no efforts in response the those the Department made to establish that L.M. was A.L.H.'s father. RR, p.8. This evidence, as did similar evidence in *In re. D.A.* and *In re B.S.T.*, provided support for the trial court's finding that the Department made reasonable efforts with regard to L.M., particularly considering L.M.'s efforts were so minimal.

There was additional evidence, moreover, showing the Department made

---

[5] There were two orders entered during the case reflecting the effort to establish paternity. One was signed on February 13, 2014 and the second on October 7, 2014. Neither appears in the Clerk's record on appeal, but a request to supplement the record has been made and copies of the orders are attached as Attachments 2 and 3.

efforts to return A.L.H. to L.M. *See In re A.S.*, 261 S.W.3d 76, 89-90 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (noting that the performance of a home study conducted on relatives was relevant to a determination regarding reasonable efforts); *see also In re. K.J.T.M.*, 06-09-00104-CV, 2010 WL 1664027, at *3 (Tex. App.—Texarkana Apr. 27, 2010, no pet.) (noting the Department's efforts to place a child with relatives as supportive of a finding that it made reasonable efforts to reunify under subsection (N)). The record here shows that the Department made significant efforts to return A.L.H. to his family by conducting home studies on his paternal aunt, and seeking the child's placement with his Ms. Moore. Zachmeyer's testimony was that the Department identified Ms. Moore's home as a possible placement for A.L.H. sometime in May of 2014, at which point it requested a study of the home be conducted in Arizona. RR, p.12. The Department reviewed the results of that study when it received them in August of 2014, approved the home, facilitated a visit between Ms. Moore and A.L.H. on the day of trial, and requested at trial that A.L.H. be placed with Ms. Moore. RR, pp. 12-13, 14-15, 17, 20. Zachmeyer testified at trial that it was her belief that placing the child with his biological family was in the child's best interest. RR, p.15. Given L.M.'s complete absence from A.L.H.'s life while the child was in care and his lack of participation in any aspect of the case, it was reasonable for the Department to seek placement of the child with Ms. Moore in the effort to return the child to his family when

L.M. himself demonstrated so little interest in A.L.H.'s return. The record reflects evidence that the Department made considerable efforts to achieve that goal. As such, the trial court had sufficient evidence to support the termination of L.M.'s parental rights under subsection (N) and the arguments in L.M.'s brief on this point should be overruled.

**REPLY POINT THREE: Though review of this ground is unnecessary, there was sufficient evidence to support the trial court's termination of the Appellant Father's parental rights under 161.001(1)(D) of the Texas Family Code.**

As only one predicate finding under Section 161.001(1) of the Family Code was necessary to support the court's parental termination decision with respect to the father, and because the evidence clearly supported Subsection (N), the court's findings under Subsection (D) need not be reviewed. *See In re A.V.,* 113 S.W.3d 355, 362 (Tex. 2003). Nonetheless, the challenge to the court's finding under (D) should also be overruled.

Subsection (D) of section 161.001(1) of the Family Code involves proof of endangerment to the child, which is defined as exposing a child to loss or injury, or jeopardizing a child's emotional or physical health. *Texas Dep't of Human Servs. v. Boyd,* 727 S.W.2d 531, 533 (Tex.1987); Tex. Fam. Code Ann. §161.001(1)(D) (West 2008). As explained by the Supreme Court, the proof for endangerment does not have to be established as an independent proposition, but can be inferred from parental misconduct alone. *Boyd,* 727 S.W.2d at p. 533. Also, it is not

necessary that the misconduct be directed at the child, occur in the child's presence or that the child actually suffer injury from it. *See In re B.B.,* 971 S.W.2d 160, 166-69 (Tex. App.—Beaumont 1998, pet. denied).

Subsection (D) requires a showing that the environment or conditions in which the child is placed endangered the child's physical or emotional well-being. *See In re A.S.*, 261 S.W.3d 76, 83 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). When the environment creates a potential for danger that a parent consciously disregards, an endangerment finding under subsection (D) is supported. *In re S.M.L.*, 171 S.W.3d 472, 477 (Tex. App.—Houston [14th Dist.] 2005, no pet.). However, courts have noted that although the focus of subsection (D) is on the child's living environment, parental conduct may produce an endangering environment. *See In re M.T.W.*, 01-11-00162-CV, 2011 WL 6938542 (Tex. App.—Houston [1st Dist.] Dec. 29, 2011, no pet.) (stating that parental misconduct in the child's home supports a conclusion that the child's surroundings endanger the child). In that connection, a parent's inappropriate, abusive, or unlawful conduct can produce an environment endangering to the physical and emotional well-being of a child in order to provide the proof necessary for a subsection (D) finding. *In re M.R.J.M.*, 280 S.W.3d 494, 502 (Tex. App.—Fort Worth 2009, no pet.).

In making the argument that the evidence was insufficient to support the trial court's section (D) finding, L.M.'s brief focuses narrowly on Zachmeyer's testimony without regard for the other evidence in the record which showed L.M. endangered A.L.H. Appellant L.M.'s Brief, pp.29-30. Contrary to the arguments in L.M.'s brief, however, the evidence when viewed in its entirety sufficiently supports the trial court's finding that termination of L.M.'s parental rights was warranted under section (D).

As Zachmeyer testified, the evidence supported that L.M. knew that A.L.H. would be exposed to an endangering environment with T.H., but did nothing to protect the child. Moreover, the record reflects that L.M. himself engaged in conduct which produced an endangering environment. The evidence was that, before A.L.H. was born, T.H. and L.M. had three other children all of whom were removed from their care because of T.H.'s use of drugs. RR, p.10. When this case went to trial, one of A.L.H.'s siblings was placed with a relative, one was in a foster home, and the third had been adopted by foster parents. RR, p.16-17. A.L.H., in turn, was removed because of ongoing concerns regarding T.H.'s use of drugs. RR, p.11. Zachmeyer testified that T.H. attempted to "clean her system with cayenne pepper," and refused to submit to a hair follicle drug test. *Id*. This evidence was undisputed and showed an extensive history of the parents'

involvement with the Department and the loss of their three previous children, as well as that T.H.'s involvement with drugs continued after A.L.H. was born.

This history supported Zachmeyer's conclusion that L.M. was aware of the danger that T.H.'s drug use posed to A.L.H. RR, p.11. Further evidence supported her statement that, though aware of that danger, L.M. did nothing to protect A.L.H. RR, p.14. She stated that though L.M. knew of A.L.H.'s birth, he was not present when the child was born. RR, p.11. Given the parents' history with their previous children, it was Zachmeyer's belief that L.M. left the child with T.H. knowing that doing so was dangerous for A.L.H. RR, p.14. Moreover, L.M. consistently demonstrated a similar lack of involvement throughout the case. He failed to visit the child, did not ask to visit the child, did not provide any support for A.L.H., failed to comply with the Department's efforts and the court's orders to establish his paternity, did not appear at any of the hearings regarding A.L.H., and did not appear at trial. RR, pp.7, 10, 11-12, 31; Attachment 2.

Furthermore, the evidence of L.M.'s own conduct showed that he subjected A.L.H. to an endangering environment. In addition to Zachmeyer's testimony was that given by Ms. Moore, who described that L.M. was involved in both drugs and crime. RR, p.39. She stated that she was aware that L.M. had a problem with using crack and cocaine, and that, before the Department became involved with A.L.H., L.M. was engaged in criminal conduct which resulted in his incarceration.

RR, pp.39, 44-45. Though she could not say what criminal charge led to L.M.'s incarceration, Moore testified that, on one occasion, both L.M. and T.H. were in jail at the same time, leaving A.L.H. to be cared for by another adult. RR, pp.44-45. That Ms. Moore considered L.M. a danger to A.L.H. was further supported by her testimony that, should she receive placement of the child, she would not allow L.M. "to come back into [A.L.H.]'s life," but rather "would protect [A.L.H.]," as she would her own children. RR, p.36. This testimony supported that Ms. Moore considered L.M. dangerous to A.L.H., warranting the child's needing protection from him.

Therefore, given the entirety of the evidence of the record regarding L.M.'s conduct and lack of involvement in A.L.H.'s life, the record provides sufficient support for the trial court's conclusion that L.M. knowingly allowed A.L.H. to remain in conditions or surroundings which endangered the child's physical or emotional well-being. Should the court find it necessary to review the evidence in support of this ground for termination, it should find the evidence sufficient and affirm the trial court's section (D) finding.

WHEREFORE, PREMISES CONSIDERED, Appellee Department of Family & Protective Services requests that this court affirm the trial court's judgment and for such other and further relief as appropriate in law or in equity.

Respectfully submitted,
VINCE RYAN
COUNTY ATTORNEY


By: */s/ Robert J. Hazeltine-Shedd*
**Robert J. Hazeltine-Shedd**
Assistant County Attorney
State Bar #24067652
1019 Congress, 17th Floor
Houston, Texas 77002
Phone: 713/274-5292; Fax: 713/437-4700
Email: robert.hazeltine-shedd@cao.hctx.net
Attorney for Appellee,
Department of Family & Protective Services

## CERTIFICATE OF SERVICE

I hereby certify that on this the 27th day of April, 2015 a true and correct copy of the foregoing Appellee's brief was sent to all parties to these appeals by sending a copy of this brief by electronic transmission to William M. Thursland, attorney for the Appellant Father, by email at **wmthursland@hotmail.com** as well as to Donald M. Crane, attorney for the Appellant Mother, by email at **donmcrane@gmail.com**, and to the attorneys ad litem for the child, Katie Flynn at **katie.flynn@att.net** and John H. Spjut at **spjutlaw@sbcglobal.net**.

*/s/ Robert J. Hazeltine-Shedd/*
**Robert J. Hazeltine-Shedd**

## CERTIFICATE OF COMPLIANCE WITH NUMBER OF WORDS

This is to certify, pursuant to Tex. R. App. P. 9.4(i)(3), that the foregoing computer generated brief consists of no more than 15,000 words, excluding the caption, identify of parties and counsel, table of contents, index of authorities, statement of the case, statement of issues presented, statement of procedural history, signature, proof of service, certification, certificate of compliance and appendix. Relying on the word count of the computer program used to prepare this document, the number of words, subject to count under the rules, is 11,717 words.

*/s/ Robert J. Hazeltine-Shedd/*
**Robert J. Hazeltine-Shedd**

# APPENDIX

**TABLE OF CONTENTS**

**Tab No.**     **Description**

1               Citation of Service on Appellant Father

2               Paternity Testing Order, February 13, 2014

3               Paternity Testing Order, October 7, 2014

4               Order Establishing Paternity, November 18, 2014

**ATTACHMENT 1**
**(Citation of Service on Appellant Father)**

ORIGINAL

CONFIRMED FILE DATE: 2/18/2014

P.2

NICOLLE CAPPS 182-3
NISELA ZAMORANO 182-3

CAUSE NO. 201400466J

82312717

IN THE INTEREST OF

A████ H████████

CHILD

FILED
Chris Daniel
District Clerk
FEB 18 2014
Time:_____
Harris County, Texas
By_____ Deputy

IN THE DISTRICT COURT OF

HARRIS COUNTY, TEXAS

313th JUDICIAL FAMILY/JUVENILE DISTRICT

THE STATE OF TEXAS
COUNTY OF HARRIS

CITATION

TO THE SHERIFF, CONSTABLE, HARRIS COUNTY ATTORNEY'S INVESTIGATORS, OR OTHER PERSON AUTHORIZED BY LAW:

TO: L████ L████ M████, RESPONDENT,

**YOU HAVE BEEN SUED.** You may employ an attorney. If you or your attorney do not file a written answer with the District Clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of 20 days after you were served this citation and petition, a default judgment may be taken against you.

Attached is a copy of the **ORIGINAL PETITION FOR PROTECTION OF A CHILD FOR CONSERVATORSHIP, AND FOR TERMINATION IN SUIT AFFECTING THE PARENT-CHILD RELATIONSHIP AND APPLICATION FOR WRIT OF ATTACHMENT AS TO** which was filed by Department of Family and Protective Services, Petitioner, on the **30th day of January, 2014**, in the above styled and numbered cause and court. The instruments attached describe the claim against you.

The Honorable Judge of the said Court, upon presentation of the said Petition to the Judge, entered an Order and Fiat, as shown by a true copy of said Order and Fiat attached hereto.

YOU ARE COMMANDED TO OBEY 313th AND ALL OF THE TERMS OF SAID ORDER AND FIAT until and pending a hearing on the application for temporary orders.

You are ordered to appear in the 313th th Judicial District Court of Harris County, Texas, The Juvenile Justice Center, 1200 Congress, Houston, Texas, on the __2-13-14__ at __1:15__ P.m. for a hearing. The purpose of this hearing is to determine whether Department of Family and Protective Services should be the Temporary Managing Conservator of the child the subject of this suit and whether other orders should be entered as requested in the attached instruments.

This citation was issued on __JAN 3 0 2014__, under my hand and seal of said Court, at the request of Department of Family and Protective Services, 2525 Murworth, Ste. 300, Houston, Texas 77054.

Chris Daniel, District Clerk
Harris County, Texas
1200 Congress, 6th Floor
Houston, Texas 77002

By:_____
Deputy

201400466J
Cause No._____
In the Interest of A████ H████

OFFICER RETURN 313th

313th TH JUDICIAL FAMILY/JUVENILE DISTRICT

Came to hand at __940__ o'clock __A__ m., on __Feb 4__, __14__, executed at _____
(address) ████████████ in __Harris__ County at __310__ o'clock __P__ m., on __Feb 5__, __14__, by delivering to L████ L████ M████ Respondent, in person a true copy of this citation together with the accompanying copy(ies) of the **ORIGINAL PETITION FOR PROTECTION OF A CHILD FOR CONSERVATORSHIP, AND FOR TERMINATION IN SUIT AFFECTING THE PARENT-CHILD RELATIONSHIP AND APPLICATION FOR WRIT OF ATTACHMENT AS TO** and the Order and Fiat attached thereto, and I endorsed on said copy of the citation the date of delivery.

NOT EXECUTED FOR THE FOLLOWING REASON: _____

TO CERTIFY WHICH I AFFIX MY HAND OFFICIALLY THIS __2-4-14__

BY: __M Hamilton__ __#25__
DEPUTY SHERIFF/DEPUTY CONSTABLE/
HARRIS COUNTY ATTORNEY'S INVESTIGATOR

ALAN ROSEN, Constable
Precinct #1, Harris County, Texas

Signed under oath before me on the ____ day of _____ 2014.

_____
Notary Public, State of Texas

My commission expires: _____

For Official Governmental Use Only - Do Not Disseminate to the Public: 60164324 - Page 1 of 2

For Official Governmental Use Only - Do Not Disseminate to the Public: 60164324 - Page 2 of 2

14 FEB 10 AM 9: 38

CONSTABLE PCT 1
HARRIS COUNTY, TEXAS

## ATTEMPTED SERVICE

| DATE | TIME | REMARKS |
|------|------|---------|
|      |      |         |
|      |      |         |
|      |      |         |
|      |      |         |
|      |      |         |







I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   April 23, 2015

Certified Document Number:        60164324 Total Pages:  2

Chris Daniel, DISTRICT CLERK

HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

**ATTACHMENT 2**
**(Paternity Testing Order, February 13, 2014)**

NICOLLE CAPPS / 182-3
NISELA ZAMORANO / 182-3

2014-00466J          MFbTX

**IN THE INTEREST OF** ~~ORIGINAL~~ **FILED**
CAUSE NO. 2014-00466J

Chris Daniel
District Clerk

FEB 13 2014

Time:_____
Harris County, Texas

By_____
Deputy

**IN THE DISTRICT COURT OF**

**HARRIS COUNTY, TEXAS**

**313**TH **JUDICIAL JUVENILE**

A████ H████████

**CHILD**

**ORDER FOR DRUG / ALCOHOL / D.N.A. SCREENING**

The following person(s) are **ORDERED** to:

[X] Report in person IMMEDIATELY to: National Screening Center
407 Fannin Street, 1st Floor, Houston, Texas 77002 (713) 226-7847; for L███ L██ M██████
to report no later than 4:30 p.m. on 2/14/2014.

[ X ] Remain in the Courtroom;

[ ] Allow National Screening Center to collect sample at _____

Each individual is **ORDERED** to remain in their respective location until samples have been drawn. Each individual named herein is ORDERED to provide such personal sample(s) as may be necessary for National Screening Center to perform the **ORDERED** Drug / Alcohol / D.N.A. screening as follows:

| NAME: | DOB | TDL/ID/SS# | TEST |
|---|---|---|---|
| 1. T██ N████ H██████ | ████ | ████ | [X] UDS [X] HAIR [ ] D.N.A. [X] ETG [X] Z.T. [ ] K2. [ ] Bath Salts |
| Relationship MOTHER | | | |
| 2. L██████ L██ M██████ | ████ | ████ | [X] UDS [X] HAIR [X] D.N.A. [ ] ETG [X] Z.T. [ ] K2. [ ] Bath Salts |
| Relationship ALLEGED FATHER of A██ H███ | | | |
| 3. _____ | | | [ ] UDS [ ] HAIR [ ] D.N.A. [ ] ETG [ ] Z.T. [ ] K2. [ ] Bath Salts |
| Relationship _____ | | | |

(UDS = Urine Drug Screen; ETG = Alcohol Test; HAIR = Hair Follicle Drug; D.N.A. Paternity Testing; Z.T. = Zero Tolerance)

It is further **ORDERED** that:     [ ] Each party named above is responsible and shall pay for each test administered

[ ] The costs of the test shall be paid as follows: __HARRIS COUNTY__

The COURT reserves the right to re-allocate the costs of the test(s) between the parties. It is **ORDERED** that as soon as the results of the test(s) are available, National Screening **SHALL** fax OR deliver the results, with **CASE NUMBER**, to the 313th District Court at FAX # 713-222-4845 for filing with the court **under seal**. National Screening shall also provide the PRINTED NAME of the person transmitting the FAX results, the method(s) by which the person tested was identified and the date and time the sample was taken.

SIGNED ON: FEB 13 2014 _____

_____
**JUDGE**

For Official Governmental Use Only - Do Not Disseminate to the Public: 59935019 - Page 1 of 1



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   April 22, 2015

Certified Document Number:        59935019 Total Pages:  1

Chris Daniel, DISTRICT CLERK

HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**

**ATTACHMENT 3**
**(Paternity Testing Order, October 7, 2014)**

AMY ZACHMEYER 362-2
TEARA MCKENTIE 362-2

**FILED**
Chris Daniel
District Clerk

OCT 07 2014 7:59

Harris County, Texas

By_____
Deputy

CAUSE NO. 2014-00466J

IN THE INTEREST OF

A____ L____ H____me:_____

CHILD

ORIGINAL

IN THE DISTRICT COURT OF

HARRIS COUNTY, TEXAS

313TH JUDICIAL JUVENILE DISTRICT

## ORDER FOR DRUG / ALCOHOL / D.N.A. SCREENING

The following person(s) are **ORDERED** to:

[ ]    Report in person IMMEDIATELY to:  National Screening Center

407 Fannin Street, 1st Floor, Houston, Texas 77002 (713) 226-7847;

[ ]    Remain in the Courtroom;

[X]    Allow National Screening Center to collect sample at _location provided in Quean Creek, AZ._

Each individual is **ORDERED** to remain in their respective location until samples have been drawn. Each individual named herein is ORDERED to provide such personal sample(s) as may be necessary for National Screening Center to perform the **ORDERED** Drug / Alcohol / D.N.A. screening as follows:

| NAME: | DOB | TDL/ID/SS# | TEST |
|---|---|---|---|

1.    T__ N__ H__

Relationship    MOTHER

TEST:
[ ] UDS
[ ] HAIR
[ ] D.N.A.
[ ] ETG
[ ] Z.T.
[ ] K2.
[ ] Bath Salts

2.    L__ L__ M__

Relationship    ALLEGED FATHER of A__ L__ H__

TEST:
[ ] UDS
[ ] HAIR
[ ] D.N.A.
[ ] ETG
[ ] Z.T.
[ ] K2.
[ ] Bath Salts

3.    M__ M__

Phone #  Relationship    Alleged Paternal Aunt of A__ L__ H__

TEST:
[ ] UDS
[ ] HAIR
[X] D.N.A.
[ ] ETG
[ ] Z.T.
[ ] K2.
[ ] Bath Salts

**(UDS = Urine Drug Screen; ETG = Alcohol Test; HAIR = Hair Follicle Drug; D.N.A. Paternity Testing; Z.T. = Zero Tolerance)**

It is further **ORDERED** that:        [ ] Each party named above is responsible and shall pay for each test administered

[ ] The costs of the test shall be paid as follows: _HARRIS COUNTY_

The COURT reserves the right to re-allocate the costs of the test(s) between the parties. It is **ORDERED** that as soon as the results of the test(s) are available, National Screening **SHALL** fax OR deliver the results, with **CASE NUMBER**, to the 313th District Court at FAX # 713-222-4845 for filing with the court **under seal**. National Screening shall also provide the PRINTED NAME of the person transmitting the FAX results, the method(s) by which the person tested was identified and the date and time the sample was taken.

SIGNED ON: _10/07/2014_

_____
JUDGE



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   April 22, 2015

Certified Document Number:        62814042 Total Pages:  1

Chris Daniel, DISTRICT CLERK

HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**

**ATTACHMENT 4**
**(Order Establishing Paternity, November 18, 2014)**

ORIGINAL

NOTICE: THIS DOCUMENT
CONTAINS SENSITIVE DATA



**FILED**
Chris Daniel
District Clerk
NOV 18 2014
Harris County, Texas
Time:
By
Deputy

AMY ZACHMEYER 362-2
TEARA MCKENTIE 362-2

CAUSE NO. 2014-00466J

IN THE INTEREST OF

A▇▇ L▇▇ H▇▇

CHILD

IN THE DISTRICT COURT OF

HARRIS COUNTY, TEXAS

313TH JUDICIAL JUVENILE DISTRICT

## ORDER ESTABLISHING PARENTAGE

On November 18, 2014, a hearing was held pursuant to Texas Family Code, Chapter 160, to determine the parentage of the child A▇▇ L▇▇ H▇▇

**1. Appearances**

1.1. The Department of Family and Protective Services ("the Department") appeared through **AMY ZACHMEYER**, caseworker, and by attorney and announced ready.

1.2. Respondent MOTHER T▇▇ N▇▇ H▇▇
☐ appeared in person and announced ready.
☑ appeared through attorney of record **SAMANTHA DAVIS** and announced ready.
☐ appeared in person and through attorney of record **SAMANTHA DAVIS** and announced ready.
☐ waived issuance and service of citation by waiver duly filed.
☐ agreed to the terms of this order as evidenced by signature below.
☐ although duly and properly notified, did not appear and wholly made default.
☐ was not notified, and did not appear.

1.3. Respondent ALLEGED FATHER L▇▇, L▇▇ M▇▇
☐ appeared in person and announced ready.
☑ appeared through attorney of record **OLIVER SPROTT, JR.** and announced ready.
☐ appeared in person and through attorney of record **OLIVER SPROTT, JR.** and announced ready.
☐ waived issuance and service of citation by waiver duly filed.
☐ agreed to the terms of this order as evidenced by signature below.
☐ although duly and properly notified, did not appear and wholly made default.
☐ was not notified, and did not appear.

For Official Governmental Use Only - Do Not Disseminate to the Public: 63328726 - Page 1 of 3

1.4. Respondent UNKNOWN FATHER
- ☐ appeared in person and announced ready.
- ☑ appeared through attorney of record **MARK LIPKIN** and announced ready.
- ☐ appeared in person and through attorney of record **MARK LIPKIN** and announced ready.
- ☐ waived issuance and service of citation by waiver duly filed.
- ☐ agreed to the terms of this order as evidenced by signature below.
- ☐ although duly and properly notified, did not appear and wholly made default.
- ☐ was not notified, and did not appear.

1.5. Respondent INTERVENOR P████████T████████H████████
- ☐ appeared in person and announced ready.
- ☐ appeared through attorney of record **MICHELLE E. BUSH** and announced ready.
- ☑ appeared in person and through attorney of record **MICHELLE E. BUSH** and announced ready.
- ☐ waived issuance and service of citation by waiver duly filed.
- ☐ agreed to the terms of this order as evidenced by signature below.
- ☐ although duly and properly notified, did not appear and wholly made default.
- ☐ was not notified, and did not appear.

1.6. Respondent INTERVENOR A███ H██████
- ☐ appeared in person and announced ready.
- ☑ appeared through attorney of record **MICHELLE E. BUSH** and announced ready.
- ☐ appeared in person and through attorney of record **MICHELLE E. BUSH** and announced ready.
- ☐ waived issuance and service of citation by waiver duly filed.
- ☐ agreed to the terms of this order as evidenced by signature below.
- ☐ although duly and properly notified, did not appear and wholly made default.
- ☐ was not notified, and did not appear.

1.7. **KATIE FLYNN**, appointed by the Court as Attorney and Guardian Ad Litem of the child the subject of this suit,
- ☑ appeared and announced ready.
- ☐ agreed to the terms of this order.
- ☐ agreed to the terms of this order, but did not appear
- ☐ although duly and properly notified, did not appear.

1.8. **JOHN HARLAN SPJUT**, appointed by the Court as Attorney and Guardian Ad Litem of the child the subject of this suit,
- ☑ appeared and announced ready.
- ☐ agreed to the terms of this order.
- ☐ agreed to the terms of this order, but did not appear
- ☐ although duly and properly notified, did not appear.

For Official Governmental Use Only - Do Not Disseminate to the Public: 63328726 - Page 2 of 3

1.9. Also Appearing _____

_____

_____

## 2. The Child

This parentage order adjudicates parentage of the following child:

Name:    A█████ L████ H█████

Sex:    **MALE**

Date of Birth:    ████████████

## 3. Findings: Alleged Father L█████ L████ M██████

3.1.    **L█████, L████ M███████ Established as Father of the Child A█████ L████ H████**

3.1.1.    The Court finds that the genetic tests do not exclude L█████ L████ M█████ as the father, and that he has at least a 99 percent probability of paternity, using a prior probability of 0.5, as calculated by using the combined paternity index obtained in the testing and a combined paternity index of at least 100 to 1 with respect to the child A█████ L█████ H██████ born on ██████████████ to T████ N██████ H█████

3.1.2.    **IT IS THEREFORE ORDERED** that L██████ L████ M█████████ is, and he is hereby adjudicated as the father of the child A███████ L████ H███████

3.1.3.    The Court finds that it is in the best interest of the child to limit the rights and duties of each parent appointed as a temporary possessory conservator.

SIGNED this _____ day of **NOV 1 8 2014**, 2014.

_____
JUDGE PRESIDING

For Official Governmental Use Only - Do Not Disseminate to the Public: 63328726 - Page 3 of 3



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   April 22, 2015

Certified Document Number:        63328726 Total Pages:  3

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**